# Weatherly *v*. Nashville, Chattanooga & St. Louis Railway.

## *Crossing Accident.*

(Decided Dec. 21, 1909.   Rehearing denied Feb. 26, 1910.
51  South. 959.)

1. *Death; Action; Contributory Negligence of Deceased.*—In an action brought for the death of deceased under section 2486, Code 1907, contributory negligence which would have barred a recovery by the deceased for damages for the injury, if he had lived, will defeat an action for his death by his personal representative.

2. *Same; Presumptions.*—No presumption for or against a personal representative in an action by him for the death of his intestate by wrongful act is raised because of the fact that his decedent cannot testify as to how the injury happened.

3. *Railroads; Crossing Accident; Rate of Speed.*—The running of a train over a street crossing at a traveled street at the rate of thirty miles per hour, and in excess of the speed limit fixed by the ordinance of the town is simple negligence.·

4. *Same; Duty to Trespasser.*—With the exception of public .crossings and a few other places mentioned in the statute a railroad's

[Weatherly v. Nashville, Chattanooga & St. Louis Railway.]

right of way is its exclusive property, and it owes no duty to those trespassing there on except not to wantonly or willfully injure them.

5. *Same; Duty at Crossings.*—The rights of a railroad company and the public to use a street are mutual, but the railroad has the right of way at crossings by reason of the nature of the vehicles operated thereon, and must use reasonable care to avoid the injury in view of all the circumstances; it is only to a limited and reasonable extent that each may rely upon the exercise of due care by the other to avoid injury.

6. *Same; Contributory Negligence; Stop, Look and Listen.*—It is the duty of pedestrians at a public street crossing with a railroad to inform themselves of the proximity of the train by stopping, looking and listening before attempting to cross, unless excused therefrom by the facts of the particular case.

7. *Same; Effect of Statute.*—The imposition of certain duties upon railroad companies at public crossings, imposed by statute or ordinance, does not exempt them from all other duties which are necessary to be exercised to avoid injury at such crossing.

8. *Same; Violation of Statute.*—Where a railroad company violates the duties imposed upon it by statute or ordinance at public crossings they become liable for at least for simple negligence.

9. *Same; Negligence; Liability.*—The provisions of section 5476, Code 1907, do not render railroad companies liable for injury at crossings irrespective of negligence contributing thereto of the person injured.

10. *Same.*—The mere injury of person or property at a public crossing does not of itself render the railroad company liable since the doctrine of res ipsa loquitur does not apply.

11. *Same; Violation of Statutory Duty; 'Wanton Negligence.*—While the failure of a railroad company to comply with the duties imposed upon it by statute at public crossings is usually simple negligence, yet, the failure to comply with such duty may be so gross, reckless and wanton as to amount to wanton or willful injury.

12. *Same.*—Though the injured party was negligent and the railroad employes were not negligent after discovering his danger, yet a railroad company is liable for injuries at a crossing if the train was run at a high rate of speed without signals over an unguarded public crossing in a populous city district, or at a place where the public usually crossed the track in large numbers, if these facts were known to the employes; their conduct under such circumstances amounting to reckless indifference.

13. *Same; Jury Question.*—Where the railroad track curved from the signal post about a quarter of a mile from the crossing to within a point within 150 and 300 feet from the crossing and was straight from there to the crossing, and the train was running from twenty-five to thirty miles an hour with headlights burning, and the signal blown at the signal post, but it was not shown with certainty whether the bell or whistle signals were given or brakes applied and the speed slackened between the signal post and within twenty or thirty feet from the crossing, but at that point the steam

was shut off, brakes applied and the danger signal given, though the train was not stopped until it had passed the place of the injury several hundred feet, and intestate was seen standing by the side of the track just as the danger signals were given, and there was a building on either side of the track at the crossing and at the time of the accident there was much travel over the street, and the street had been much used by the public and the engineer in charge of the engine had been on that run for sometime, and the accident happened about 8 p. m., it was a question for the jury as to whether or not the employes of the defendant were guilty of wanton negligence in running over the intestate; and as to whether defendant's wanton negligence was the proximate cause of the injury to plaintiff's intestate was also a question for the jury.

14. *Same; Evidence.*—Where the action was for the death of plaintiff's intestate caused by being struck by a train of defendant at a public crossing, it is competent to show the extent and frequency of travel at crossing at the time of the injury.

15. *Same.*—Where the action was for the death of plaintiff's intestate. and it was not shown that intestate was so deceived, it was not competent to show whether one standing where intestate was when injured could distinguish defendant's tracks from those of another company paralleling them, or whether the lights seemed to make one track look like the other.

16. *Negligence; Proximate Cause.*—In order to be actionable, a defendant's negligence must have proximately contribtued to the injury in that it would not have happened except for such negligence.

17. *Witnesses; Examination; Leading Question.*—It is within the discretion of the trial court to permit or not, leading questions to be asked, and not revisable unless abused.

(Dowdell, C. J., and Simpson, J., dissenting.)

APPEAL from Gadsden City Court.

Heard before Hon. JOHN H. DISQUE.

Action by G. W. Weatherly as administrator against the Nashville, Chattanooga & St. Louis Railway, under the homicide statute for causing the death of his intestate. Judgment for the defendant and plaintiff appeals. Reversed and remanded.

HOWARD & HUNT, and CULLI & MARTIN, for appellant. Under the facts in this case, it should have been left to the jury to determine whether the servant and agent of the defendant was guilty of wanton or willful injury in killing plaintiff's intestate.—*Southern Ry. v. Crenshaw,* 136 Ala. 583; *M. & C. R. R. Co. v. Martin,* 117

Ala. 367; *L. & N. v. Muscat*, 41 South. No. 4. Evidence of the conditions and surroundings at the place and time of the accident were admissible.—8 Enc. of Evi. 904. So was evidence relative to the location of the physical and topographical facts surrounding the place of the accident at the time thereof admissible.—*M. & C. v. Martin, supra; Andrews v. M. C. & F. D. R. R. Co.*, 77 Ia. 669; 8 Enc. of Evi. 912; *L. & N. v. Sandlin*, 125 Ala. 590. The court erred in refusing to permit plaintiff to prove previous accidents at the same place.—8 Enc. of Evi. 928; 6 Thomp. on Neg. sec. 7872; *Bir. U. Ry. Co. v. Alexander*, 93 Ala. 133. Section 5476, Code 1907, governs, and under its provisions the railroad was liable.—*Mouton v. L. & N.*, 128 Ala. 539; *Holmes v. B. S. R. R. Co.*, 140 Ala. 208.

GOODHUE & BLACKWOOD and WALKER & SPRAGINS, for appellee. If the intestate were living he could not be heard to say that he did not see the approaching train in time to step out of the way.—*Peters v. Southern Ry. Co.*, 135 Ala. 533; *C. of Ga. v. Foshee*, 125 Ala. 214. In order to predicate wantonness on the running of a train over a street crossing, the train must be run at rapid speed and without signals of warning.—*A. G. S. v. Guest*, 144 Ala. 380; *Haley v. K. C. M. & B.*, 113 Ala. 650; *G. P. R. R. Co. v. Lee*, 92 Ala. 271. There was no evidence of wantonness in the case at bar.—*Southern Ry. Co. v. Shelton*, 136 Ala. 211. An engineer may presume that an adult person on the track or approaching the track is in full possession of his senses, and that he will exercise ordinary care and diligence for his own safety until the circumstances convince him otherwise. —*L. & N. v. Black*, 89 Ala. 316; 3 Elliott on Railroads, sec. 1153. Unless it appears that the speed limit in excess of the ordinance was a proximate cause of the in-

jury, no cause is presented under such count.—*Bryant v. Southern Ry.,* 137 Ala. 488; 3 Elliott on Railroads, sec. 1166. The running of a train over a street crossing in excess of the speed limit permitted by the ordinance is not wanton unless done with the knowledge and present consciousness that injury will probably result.— *Ga. Pac. v. Ross,* 100 Ala. 490; *L. & N. v. Mitchell,* 134 Ala. 267; *L. & N. v. Muscat,* 41 South. 302. The pleas of contributory negligence were fully sustained by the proof, and there could be no recovery on the counts in simple negligence.—*C. of Ga. v. Foshee,* 125 Ala. 199; *L. & N. v. Mitchell, supra.*

MAYFIELD, J.—Appellant sued to recover damages for the wrongful death of his intestate. The action is under our familiar homicide statute. The complaint contained six counts. Count 1 relied on simple negligence. The other counts declared on wanton negligence and willful injury. The wrongful act complained of in each count is that defendant ran one of its trains or engines against plaintiff's intestate, thereby killing him. The venue is a public street crossing in the city of Gadsden. The time was 8 o'clock at night, on May 27, 1907. The train alleged to have killed the intestate was a regular daily passenger train, coming into Gadsden at this hour. Each count alleges that intestate was crossing or attempting to cross the defendant's railroad track at a public street crossing in the city of Gadsden at the time of the injury. The defendant pleaded the general issue and contributory negligence to the first count, and the general issue as to the other counts. After the plaintiff had introduced all his evidence, the defendant declined to introduce any evidence, and moved the court to exclude that of the plaintiff's, and requested the general affirmative charge in its favor.

[Weatherly v. Nashville, Chattanooga & St. Louis Railway.]

The court granted the motion, and gave the charge requested, which, of course, resulted in a verdict for defendant, from which plaintiff appeals, here assigning various errors, chief among which are the exclusion of his evidence, and the giving of the charge for defendant. The complaint was unquestionably proven, except as to the allegations of negligence or willful acts of defendant which caused the injury.

Therefore the important, if not the sole, question for review is: Did the evidence show, or tend to show, that the intestate's death was proximately caused by any wanton negligence or willful act alleged, or was it the result of, or proximately caused by, any act of simple negligence alleged, to which injury or death intestate's own negligence did not proximately contribute, or was intestate's death, as shown by the evidence, a mere accident, for which no one is civilly liable? The plaintiff cannot, and should not, recover in this action unless the intestate could have recovered for the injury, under the same state of facts, if death had not resulted; that is, if he was guilty of such contributory negligence as would have barred his own action for the injury had death not resulted, then that same negligence will bar plaintiff's action when death resulted.—Code, §2486 (27). The fact that intestate cannot tell his story as to how the injury happened cannot be considered to raise a presumption in plaintiff's favor, or against the defendant. The case must be tried as if intestate were present and declined to testify, except that no presumption must be indulged against plaintiff for such failure to testify.

As to the first count, the evidence we think clearly shows simple negligence in running the train 30 miles per hour and in excess of the speed fixed by the municipal ordinance of the city of Gadsden. It was also open to the jury to infer from the evidence that there was a

failure on the part of the railroad company to comply with section 5473 (3440) of the Code.

The next inquiry is: Was or could it be inferred by the jury that this negligence proximately contributed to or caused the death, or was the death the result of, or proximately caused by, intestate's own negligence, did plaintiffs own evidence affirmatively show this, or was it a mere accident for which no one is responsible, or was the jury authorized to infer wanton negligence or willful injury from this evidence, so as to avoid the contributory negligence of plaintiff's intestate, if found to exist? The mere concurrence of negligence on the part of a defendant, with injury to the plaintiff, does not always make a cause of action for the injury. The negligence of the defendant must proximately contribute to the injury; that is, but for the negligence, the injury would not have happened. The same is true as to the plaintiff's negligence. The mere fact that a plaintiff was guilty of negligence when he was injured by defendant's negligence does not defeat his action for the injury. To do this his negligence must have proximately contributed to his own injury. There is, however, a class of cases in which a plaintiff will be entitled to recover for an injury suffered when he was guilty of negligence, and when, but for his negligence, the injury would not have happened. This class of cases is where the negligence of the plaintiff precedes that of the defendant; that is, where the defendant was guilty of negligence which directly caused or proximately contributed to the injury after the plaintiff's negligence, and the defendant, by the exercise of reasonable care after knowledge of the plaintiff's negligence, could have avoided the injury. This class is denominated "subsequent negligence" and "last clear chance" cases. This same doctrine or rule also applies to defeat plaintiff's

right of recovery, when he has the last chance to avoid the injury and negligently fails so to do, or is thereafter guilty of the last act of negligence which proximately contributes to his injury, which, but for his negligence, would not have resulted. This doctrine or rule had its origin in England, being first announced in the case of *Davis v. Mann*, 10 Mus. & Wer. 546, in which the owner of a donkey turned it out upon the streets with its feet fettered and clogged, and a traveler on the highway negligently drove a wagon against it, and killed it.

The doctrine has since spread to the United States, and has been announced, clarified, and amplified by most all the courts of the Union, state and federal. It is only necessary to state the rule or doctrine as it has been announced in this state and applied to injuries caused at railroad crossings. Some of the cases in this state seem to deny the plaintiff's right to recover for personal injuries inflicted by a railroad at a public crossing where plaintiff himself was guilty of contributory negligence, unless the defendant was guilty of wanton negligence or willful injury; but a close examination of such cases will show that in each the negligence of the plaintiff was concurrent and continuing to the very time of the injury, and was therefore the efficient and direct cause of the injury, without which, it being so continuing and concurring, the injury would not have happened. In these cases the negligence of the plaintiff was clearly the "causa causans."—*Frazer's Case*, 81 Ala. 185, 1 South. 85, 60 Am. Rep. 145. In *Tanner's Case*, 60 Ala. 621, the rule is applied, and held to be, that the plaintiff's negligence was no defense, if the defendant could thereafter, by the exercise of reasonable care, have avoided injuring him. In *Cook's Case*, 67 Ala. 539, it is said that, where an injury is

perpetrated by a defendant either wantonly, recklessly, or intentionally, the defense of plaintiff's contributory negligence is thereby overcome and vitiated; but such conduct on the part of the defendant, says the court, is not necessary in order to establish his liability, though the negligence on the part of plaintiff may have co-operated to produce the damage—affirming and following *Tanner's Case,* and *Gothard's Case,* 67 Ala. 114, and qualifying *Hanlon's Case,* 53 Ala. 70.

If a person voluntarily places himself in an obviously dangerous position on a railroad track, or so near thereto as to be struck by passing trains, thereby assuming the risk, and while there continues to use no proper means of discovering the danger, or, on discovering it, continues in the dangerous position without attempting to avoid it, and, in consequence thereof, is struck by a passing train, he cannot recover, in the absence of wanton negligence or willful injury on the part of the railroad company; but if, after discovering his peril, the result of his contributory negligence, he attempts to avoid the injury, and the railroad company is thereafter guilty of any negligence, simple or wanton, which proximately contributes to his injury, the railroad company is liable.—Authorities, supra; *Richards' Case,* 100 Ala. 365, 13 South. 944; *Lee's Case,* 92 Ala. 262, 9 South. 230.

Except at public crossings and a few other places, the track and right of way of a railroad are its exclusive property, upon which a stranger has no right to be, and to those who trespass thereupon it owes no duty as a rule, except not to wantonly or willfully injure them. But at public crossings a different rule prevails. There the public have a right to use the public street, road, or highway, to travel along it, on foot or in vehicles, and to cross the railroad track, if necessary to

use the highway. The rights of the public and of the railroad to use the streets or highways where they are crossed or occupied by a railroad track are mutual and reciprocal. But, owing to the great weight, momentum and speed of commercial trains, they have the right of way at public crossings. They are confined to a fixed track upon the rails, and cannot turn to right or left to avoid collisions, as can other travelers upon the highway. Yet this right of precedence as to crossings does not exempt the railroad from the duty to try to avoid collisions thereat. The public and the railroad must resort to reasonable and proper efforts, considering all the attendant circumstances in each particular case to avoid the injury. Each may to a limited and reasonable extent rely upon the other to exercise reasonable and ordinary care to avoid injury by collisions. The track itself is a warning to the public of dangers, and travelers should inform themselves as to the proximity of trains before attempting to cross. They must stop, look, and listen for trains before attempting to cross the railroad track, unless there be some fact to excuse them of this duty. Certain duties of railroads as to public crossings are often prescribed by statute and by municipal ordinance, and some of such duties are so provided in this state.—Code, §§ 5473-5476. But providing these duties by statutes and by ordinance does not exempt the railroad from all other duties which are reasonable to avoid injury or collision at crossings.

A railroad which violates any of these duties imposed by statute or ordinance as to public crossings is at least guilty of simple negligence, per se, and, if the omission is established, such negligence arises as matter of law. The statute (section 5476) makes the railroad liable for all injury to persons or property from a failure to comply with the statutory duties as to crossings, and also

places the burden upon the railroad to show compliance with its statutory duties. But this negligence, no more than other, does not necessarily make the railroad company liable for all injuries at crossings the result of collisions with its trains. This negligence of failure to comply with the statutory requirements, like all other negilgence, in order to render the railroad company liable, must be actionable, and must proximately contribute to the injury complained of. If the injury complained of is the result of plaintiff's negligence, or if his negligence concurred with the simple negligence of defendant's—of failing to comply with the statute or ordinance—in producing the injury complained of, the plaintiff cannot recover. These duties required of railroads at crossings, by statute or ordinance, are no more sacred or binding than are other duties imposed by the common law, which have been announced by the courts and text-writers on the subject, no more sacred or binding on the railroad than are the duties which the common law of this country has enjoined upon the public in crossing railroad tracks, often declared by the courts, among which is the duty to stop, look, and listen before crossing the track.

The mere fact that a person or property is injured by a railroad at a public crossing does not, without more, conclusively make the railroad liable therefor. Nor does the doctrine of "res ipsa loquitur" apply. If it did, it would speak the negligence of the plaintiff as much as that of the railroad. It is true that the same renders the railroad liable for the injury if it results from a failure to comply with the statutory regulations, and places the burden of proof upon the railroad to show a compliance with the statutory duties imposed in such cases. But the effect of the statute is to impose certain duties upon the railroad company which might

not otherwise exist, and to place the burden of proof upon the railroad to show that it discharged these duties thus imposed by the statute. The statute does not have the effect to render the railroad absolutely liable for injuries occurring at crossings, irrespective of negligence on its part which caused or contributed to the injury. If it did, it would clearly be unconstitutional. —*Zeigler's Case,* 58 Ala. 594; *Parson's Case,* 100 Ala. 662, 13 South. 602, 27 L. R. A. 263, 43 Am. St. Rep. 92; *Hembree's Case,* 85 Ala. 481, 5 South. 173; *Green's Case,* 73 Ala. 26; *Davis v. State,* 68 Ala. 58, 44 Am. Rep. 128; *Larkin's Case,* 66 Ala. 87; *Willburn's Case,* 63 Ala. 436.

As a rule, the mere failure to comply with the duties imposed by statutes and ordinances upon railroads at public crossings constitutes only simple negligence. This has often been declared by this court.—*Lee's Case,* 92 Ala. 262, 9 South. 230; *Sampson's Case,* 91 Ala. 560, 8 South. 778; *Martin's Case,* 117 Ala. 382, 23 South. 231; *Orr's Case,* 121 Ala. 489, 26 South. 35; *Mitchell's Case,* 134 Ala. 266, 32 South. 735. Yet we do not think that it is impossible for the failure to comply with these duties to be so gross, reckless, and wanton as to amount to wanton misconduct. The failure to comply with these duties, just like the failure to comply with other duties, however imposed, may be so gross, reckless, and wanton as to evince an absolute disregard of the rights of others, and an absolute indifference to the injury of persons and property; and in such cases may render the act which violates the duty wanton negligence, thus making the wanton act as culpable as if the injury had been willfully inflicted, though there be no specific intent to inflict the injury, or specific knowledge or consciousness that the particular injury would result from the wrongful act; that is, negligence may be so gross

and reckless as to be wantonness, which may render the party as guilty as if the injury were willfully inflicted. To illustrate, suppose a railroad should pass through a populous city, and along one of its public streets usually crowded and thronged with travelers, and other streets of like kind crossed the street in which was laid the railroad track, all of which was known to the agents in charge of the trains, and that the railroad company should run its heavy passenger and freight trains through such city on such street at the rate of 50, 60, or 70 miles per hour, and with no more precaution than it employs in running these trains through the country on its own exclusive roadbed; it would therefore be impossible to prevent accidents and injuries at these crossings, no matter how careful the public might be. This we think might well be held to be such an act as to constitute wantonness, though there be no specific intent to injure any particular person or property. It might be said to be universal malice. Our court has frequently so decided as to injury both to persons and property by railroads.

The following has often been announced to be the law in this state as to this proposition : "To run a train at a high rate of speed and without signals of approach at a point where the trainmen have reason to believe there are persons in exposed positions on the track, as over an unguarded crossing in a populous district of a city, or where the public are wont to pass on the track with such frequency and in such numbers, facts known to those in charge of the train, as that they will be held to a knowledge of the probable consequence of maintaining great speed without warnings, so as to impute to them reckless indifference in respect thereto, would render their employer liable for injuries resulting therefrom notwithstanding there was negligence on the part

of those injured, and no fault on the part of the serv‐
ants after seeing the danger."—*Lee's Case,* 92 Ala. 271,
9 South. 230; *Meadors' Case,* 95 Ala. 137, 10 South. 141;
*O'Shield's Case,* 90 Ala. 29, 8 South. 248; *Webb's Case,*
97 Ala. 312, 12 South. 374; *Martin's Case,* 117 Ala. 383,
23 South. 231; Id., 131 Ala. 279, 30 South. 827; *Rice's
Case,* 142 Ala. 677, 38 South. 857; Id., 144 Ala. 613, 38
South. 857; *Foshee's Case,* 125 Ala. 199, 27 South. 1006.
Railroad companies that knowingly run their trains
under conditions rendering it impracticable for those
in charge to prevent injury to stock by straying upon
their tracks are accountable for the injury, except in
those cases in which the injury cannot be ascribed to
the company's negligence.—*Hewitt's Case,* 139 Ala.
443, 36 South. 39, 101 Am. St. Rep., 42; *Harris' Case,*
98 Ala. 326, 13 South. 377; *Davis's Case,* 103 Ala. 661,
16 South. 10; *Cochran's Case,* 105 Ala. 354, 16 South.
797; *Kelton's Case,* 112 Ala. 533, 21 South. 819; *Stark's
Case,* 126 Ala. 367, 28 South. 411; *Anchors' Case,* 114
Ala. 493, 22 South. 279, 62 Am. St. Rep. 116; *Brinker‐
hoff's Case,* 119 Ala. 606, 24 South. 892.

If this is true as to live stock, ought it not to be, and
is it not, true as to injuries to persons at public cross‐
ings? As is said by Coleman, J., in *Martin's Case,* 117
Ala. 385, 23 South. 231: "It is earnestly contended by
appellant that such a rule will greatly impede commer‐
cial transactions, and directly impair the efficiency of
transportation by railroads. The public and railroads
have their respective rights, and are under mutual obli‐
gations at public crossings and in the use of them. The
doctrine of sic utere tuo ut alienum non laedas applies
alike to persons and corporations. The value of human
life cannot be overbalanced by any pecuniary or public
interest. Our duty is simply to declare the law." The
evidence showed that intestate was killed by a regular

passenger train of defendant's at a public street cross-
ing in the city of Gadsden; that the train was coming
into Gadsden from the North at schedule time, which
was about 8 o'clock in the evening. The whistle was
blown at the signal post, about a quarter of a mile from
the place of the accident. The railroad track, as it ap-
proached the crossing, curved from the signal post un-
til it reached a point about 150 or 300 feet from the
crossing, and from that distance the track was straight
to the crossing. The headlight was burning, and the
train was running 25 to 30 miles per hour. It was not
made certain whether any bell was rung or whistle
sounded or brake applied, or that the speed was checked
from the signal post until the train was within 20 or
30 feet of the place where intestate was struck. The
evidence showed that at this point the steam was shut
off, brake applied, alarm sounded, and bell rung; but
the train was not stopped until it had passed the place
of the injury several hundred feet. The only evidence
as to the position of the deceased was that he was seen
standing by the side of the track just as the danger sig-
nal was given, and when the train was within 20 or 30
feet of him. There was a boarding house on one side
of the track at this crossing and a storehouse on the
other. At the hour and place of the accident travel
along and over the street crossing was much and fre-
quent. The street had been used as a public street of
the city for a long time, and was much traveled by the
public. The engineer in charge of the locomotive which
caused the accident had been running on the defend-
ant's road and this particular run for some time prior
to the accident.

Under the evidence shown by the record in this case,
we think the question of the degree of the defendant's
negligence, of its result, and of the plaintiff's negli-

[Weatherly v. Nashville, Chattanooga & St. Louis Railway.]

gence should have been submitted to the jury under proper instructions as to the law applicable to the case, as in this opinion we have endeavored to expound it. We do not think the court can as matter of law say that intestate's negligence proximately contributed to his injury, or that it succeeded or concurred with that of the defendant to produce the injury; or that the evidence did not tend to show, or to authorize the jury to infer, that the defendant was not guilty of wantonness which contributed to, or resulted in plaintiff's intestate's death. It was competent for plaintiff to prove the extent and frequency of travel along the street which intestate was traveling at the time of the injury. The questions propounded to show this were probably leading, and for that reason objections thereto were properly sustained; but, as to some of them, we doubt if this ground was good, though it is not necessary for us to decide the point, as the case must be reversed. However, questions can and should be so framed as not to violate the rules of evidence.

We do not think that it was proper or competent for plaintiff to have the opinions of witnesses as to whether or not a person standing where the deceased was standing at the time of the injury could distinguish the tracks of the defendant company from those of the Louisville & Nashville Railroad Company; or as to whether, on account of the relative positions of the two tracks and the lights, there was superinduced something like an optical illusion which made one track look like the other. If it be conceded that this was true, which was not the actual fact in this case, there is no evidence that plaintiff was so deceived, or any facts which would justify the inference that he was so deceived.

The judgment of the trial court is reversed, and the cause is remanded.

Reversed and remanded.

[Carlisle v. Alabama Great Southern Railway.]

A majority of the court, composed of ANDERSON, MC-CLELLAN, SAYRE, and EVANS, JJ., concur in the conclusion that the trial court improperly excluded the plaintiff's evidence, and that it was error to give the general affirmative charges requested by the defendant, and to the effect that there was evidence from which the jury might find that the defendant was guilty of wanton misconduct which proximately contributed to the injury; but do not concur in the conclusions of the writer on the question of contributory or subsequent negligence, and do not desire to commit themselves to what is said in the opinion of the writer on this question. DOWDELL, C. J., and SIMPSON, J., dissent, and are of the opinion that the cause should be affirmed.