(100 South. 356)

### SOUTHERN RY. CO. v. CATES. (6 Div. 988.)

(Supreme Court of Alabama. May 15, 1924.)

**1. Appeal and error ⬤➥761—Grouping assignments of error and argument permissible.**

Grouping assignments of error and argument under several propositions presented for decision, without waiving assignments of error, is permissible and to be commended.

**2. Negligence ⬤➥119(6) — Recovery allowed for subsequent negligence under count for simple negligence.**

Defendant's negligence subsequent to discovery of plaintiff's peril can be recovered for under count declaring for simple negligence.

**3. Railroads ⬤➥346(2)—Burden on plaintiff to show facts making statute applicable.**

Code 1907, § 5476, declaring burden of proof to be on railroad, where injury is from crossing collision, to show compliance with section 5473 as to signals, and freedom from negligence, does not take from plaintiff burden of proving circumstances to be such that statute can apply, by proving injury by train at crossing.

**4. Evidence ⬤➥32—Judicial notice taken of ordinances.**

Under Gen. Acts 1915, p. 297, § 7, courts take judicial notice of ordinances of city of Birmingham.

**5. Railroads ⬤➥346(5) — Burden of proving contributory negligence on defense.**

Burden of proving contributory negligence in crossing accident was on railroad asserting it.

**6. Railroads ⬤➥350(29) — Contributory negligence at guarded crossing held for jury.**

Contributory negligence is not shown as matter of law or as necessary inference when a human being is stricken in daytime on grade crossing in city where public constantly pass, and railroad is required to keep crossing flagman to open and close crossing to public by flags and signals.

**7. Railroads ⬤➥327(3)—Care required of pedestrian at crossing.**

Pedestrian approaching grade crossing was required to exercise such care for his own safety as an ordinarily careful and prudent person would have exercised under circumstances with reference to danger of approaching trains on track guarded by watchman.

**8. Railroads ⬤➥346(2)—Evidence held to make prima facie case of negligence, shifting burden of proof.**

In pedestrian's action, revived by administrator, for injuries from being run down by defendant's engine at crossing, plaintiff's evidence *held* to have made prima facie case of defendant's negligence so as to require it to acquit itself under Code 1907, §§ 5473, 5476, and ordinances of city of Birmingham.

**9. Trial ⬤➥142—Affirmative charge not given of evidence affords inference adverse to party requesting it.**

The affirmative charge should not be given, if there is evidence reasonably affording inference adverse to right of recovery of party asking it.

**10. Trial ⬤➥140(1)—Conflict in evidence of witness presents question of credibility for jury.**

Conflict in evidence of witness on material question of fact presents question of credibility for jury.

---

⬤➥For other cases see same topic and KEY-NUMBER in all Key Numbered Digests and Indexes

**11. Railroads ⬀350(1)—Negligence of crossing held for jury.**

Whether railroad company discharged its burden of proof under Code 1907, §§ 5473, 5476, to acquit itself of negligence in crossing injury to pedestrian, *held* under evidence properly for jury.

**12. Trial ⬀90—Overruling objection to question after answer held without error.**

Where objection to question was made after answer, and there was no motion to exclude, overruling objection was without error.

**13. Trial ⬀251(8)—Instruction held illustration and not submission of issue not in evidence.**

In action for injury at a grade crossing, instruction on plaintiff's duty of care that, if a man's eyesight or hearing was bad, then question would be how a reasonably prudent man so circumstanced with reference to eyes and ears would act, *held* to be way of illustration, and not submission of issue not in evidence.

**14. Trial ⬀260(10)—Refusal to instruct further that no damages were claimed for death held proper.**

Where court stated to jury that no damages were claimed for death, refusal to instruct further to that effect was not error.

**15. Trial ⬀194(20)—Refusal to instruct that decedent did not sustain permanent injury held proper.**

Where evidence disclosed permanency of injury to plaintiff's decedent, there was no error in refusing charge that, if jury believed evidence, they could not find deceased sustained permanent injury.

**16. Damages ⬀211—Refusal to instruct not to find more than nominal damages not error.**

Where evidence showed suffering and expressions of pain from time of injury to time of death several weeks later, refusal to charge not to award more than nominal damages was not error.

**17. Damages ⬀132(8)—$3,000 for injuries to arm not excessive.**

In action for injuries to pedestrian sustaining injuries to arm when struck by train, verdict for $3,000 *held* not excessive.

Appeal from Circuit Court, Jefferson County; Richard V. Evans, Judge.

Action for damages by Andrew J. Cates against the Southern Railway Company, revived in the name of Alta Cates, as administratrix, for personal injuries resulting from a collision by an engine or train. Judgment for plaintiff in the sum of $3,000, and defendant appeals. Affirmed.

Charges 16 and 17, refused to defendant, are as follows:

"(16) If you believe the evidence in this case, you cannot find that the deceased sustained any permanent injury."

"(17) If you believe the evidence in this case, you cannot award the plaintiff more than nominal damages for or on account of any permanent injury that the plaintiff's intestate sustained."

Stokely, Scrivner, Dominick & Smith, of Birmingham, for appellant.

Plaintiff's intestate, under the evidence, was guilty of such negligence, which proximately contributed to his own injury, that the trial court should have given the general affirmative charge in favor of appellant. L. & N. v. Turner, 192 Ala. 392, 68 South. 277; L. & N. v. Cloud, 207 Ala. 373, 92 South. 550; Hines v. Cooper, 205 Ala. 70, 88 South. 133; Weaver v. A. G. S., 200 Ala. 432, 76 South. 364; Bailey v. So. Ry., 196 Ala. 133, 72 South. 67. The question as to whether or not the appellant paid for medical services rendered plaintiff's intestate, and the affirmative answer thereto, were highly prejudicial, and should not have been admitted. Johnson v. Johnson, 201 Ala. 41, 77 South. 335, 6 A. L. R. 1031. Physical infirmities, such as bad eyes or defective hearing, do not lessen the degree of care which is required of one about to go upon or cross a railroad track, and absent-mindedness does not excuse the use of proper care under such circumstances. 22 R. C. L. 975, 1017; B. R. & E. Co. v. Bowers, 110 Ala. 328, 20 South. 345; Jacobs v. So. Ry., 241 U. S. 229, 36 Sup. Ct. 588, 60 L. Ed. 970; Chewning v. Ensley Ry. Co., 100 Ala. 493, 14 South. 204; Wood v. Richmond, 100 Ala. 660, 13 South. 552; McLaren v. Ala. Mid. Ry. Co., 100 Ala. 506, 14 South. 405; L. & N. v. Hall, 87 Ala. 719, 6 South. 277, 4 L. R. A. 710, 13 Am. St. Rep. 84.

Harsh, Harsh & Harsh, of Birmingham, for appellee.

A mere statement of the point or exception, and an insistence thereon, will not be considered as sufficient. Georgia Cot. Co. v. Lee, 196 Ala. 599, 72 South. 160; Stover v. Hill, 208 Ala. 575, 94 South. 829. The burden of proof was upon defendant railroad company to show its compliance with the statutes, and also that it was not guilty of any negligence, immediately upon plaintiff showing that her intestate was injured by a locomotive, operated by defendant company. Code 1907, § 5476; Birmingham So. R. R. Co. v. Harrison, 203 Ala. 284, 82 South. 543; No. Ala. R. R. Co. v. White, 14 Ala. App. 228, 69 South. 308; N., C. & St. L. v. Cox, 18 Ala. App. 672, 94 South. 247; Wetzel v. Birmingham So. R. R. Co., 204 Ala. 619, 87 South. 97. The negligence of defendant subsequent to the discovery of the peril of intestate can be recovered for under the simple negligence count. So. Exp. Co. v. Roseman, 206 Ala. 681, 91 South. 612. Contributory negligence is not a necessary inference arising from the fact that in broad daylight a grown man was struck by an engine on a grade crossing of a much-traveled public thoroughfare, where the railroad company is required to

⬀For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

and does keep a crossing flagman. Birmingham So. R. R. Co. v. Harrison, supra; So. Ry. Co. v. Shelton, 136 Ala. 208, 34 South. 194; B. R., L. & P. Co. v. Fox, 174 Ala. 676, 56 South. 1013; Bromley v. Birmingham Min. R. R. Co., 95 Ala. 397, 11 South. 341. Expressions of pain or suffering are admissible in evidence, to show that pain or suffering was actually endured by the person giving vent to such expressions. Phillips v. Kelly, 29 Ala. 633; K. C., M. & B. v. Matthews, 142 Ala. 311, 39 South. 207, 4 Ann Cas. 168; Eckles & Brown v. Bates, 26 Ala. 659; Birmingham Union Ry. Co. v. Hale, 90 Ala. 10, 8 South. 142, 24 Am. St. Rep. 748; W. U. Tel. Co. v. Henderson, 89 Ala. 511, 7 South. 419, 18 Am. St. Rep. 148; So. Ry. Co. v. Hardin, 1 Ala. App. 277, 55 South. 270.

THOMAS, J. The suit is for personal injury. The case was submitted to the jury on the first count claiming simple negligence, and pleas in short by consent.

[1] Counsel for appellant group assignments of error and argument under the several propositions presented for decision, without waiving assignments of error. This practice is permissible (Sovereign Camp v. Craft, 210 Ala. 683, 99 South. 167), and to be commended.

The question of sufficiency of the wanton count (Jackson v. Vaughn, 204 Ala. 543, 86 South. 469) was eliminated by the charge of the court. The claim for damages for personal injury being brought by Mr. Cates, that suit survived, and was duly prosecuted by his administratrix. Code 1907, § 2496.

[2] The negligence of a defendant subsequent to the discovery of plaintiff's peril can be recovered for under a count declaring for simple negligence. B. S. R. Co. v. Harrison, 203 Ala. 284, 289, 82 South. 534; Southern Ry. Co. v. Lime Cole Bottling Co., 210 Ala. 336, 98 South. 1; Cent. of Ga. Ry. Co. v. Foshee, 125 Ala. 201, 217, 27 South. 1006; L. & N. R. R. Co. v. Calvert, 172 Ala. 597, 55 South. 812; A. G. S. R. Co. v. McWhorter, 156 Ala. 269, 47 South. 84. This is in consonance with the rule of good pleading in Ala. Fuel & Iron Co. v. Bush, 204 Ala. 658, 86 South. 541; T. C., I. & R. R. Co. v. Smith, 171 Ala. 251, 257, 55 South. 170. See earlier statement of that rule to be found in Faris v. Hoberg, 134 Ind. 269, 33 N. E. 1028, 39 Am. St. Rep. 265.

[3, 4] It will be noted that the statute declares the burden of proof to be upon a defendant railroad company, where injury is shown to have been caused by collision with its engine or train at a public road crossing, to show (1) compliance with the requirements of such sections (as that requiring ringing bell and blowing whistle [Code, § 5473]), and (2) that there was no negligence on the part of the company or its agents in the premises. Code, § 5476; A. G. S. R. Co. v. McDaniel, 192 Ala. 639, 643, 69 South. 60; Weatherly v. N. C. & St. L. Ry., 166 Ala. 575, 584, 51 South. 959; B. S. R. Co. v. Harrison, 203 Ala. 284, 287, 82 South. 534. This burden of proof declared by statute does not take away from the plaintiff the burden of proving the circumstances to be such that the statute can apply—by proving either positively or circumstantially that the injury to person, stock, or other property was inflicted on or at the crossing by one of defendant's trains or engines on the track of defendant or one used by it at the time of the injury. When this is shown, the burden then shifts, under the statute, to the defendant to acquit itself of negligence. B. S. R. Co. v Harrison, supra; L. & N. R. Co. v. Watson, 208 Ala. 319, 94 South. 551; A. G. S. R. Co. v. Wedgworth, 208 Ala. 514, 94 South. 549; Northern Ala. Ry. Co. v. White, 14 Ala. App. 228, 69 South. 308, and authorities; M. & O. R. Co. v. Borden Coal Co. (Ala. App.) 98 South. 315.[1] So also defendant must have observed the ordinances of the city of Birmingham that were before the jury (A. G. S. R. Co. v. McDaniel, 192 Ala. 639, 643, 69 South. 60), and of which the courts take judicial knowledge by express terms of the statute, limited to the ordinances of that city. City Cleaning Co. v. Birmingham W. Co., 204 Ala. 51, 85 South. 291; Birch v. Ward, 200 Ala. 118, 75 South. 566; Gen. Acts 1915, p. 297, § 7.

[5, 6] Under the plea of contributory negligence, the burden of proof was assumed by the defendant to show such negligence on the part of plaintiff's intestate which proximately contributed to his injuries. It cannot be said as a matter of law or necessary inference that contributory negligence is shown when a human being is stricken in the daytime on a thoroughfare or grade crossing in a city where the public constantly pass and where the railroad company is required to and does keep a crossing flagman to open and close that crossing to the public by use of flags or signals. A tendency of the evidence was that such flagman was present and a few feet ahead of the engine and opposite or between the plaintiff and the engine; and it is not shown by that flagman what he did in the premises. Under the unusual circumstances, the inference of fact is such as may be drawn by the jury. Cunningham Hdwe. Co. v. L. & N. R. Co., 209 Ala. 327, 96 South. 358; B. S. R. Co. v. Harrison, supra; B. R., L. & P. Co. v. Fox, 174 Ala. 657, 675, 56 South. 1013; South. Ry. Co. v. Shelton, 136 Ala. 191, 208, 209, 34 South. 194; Bromley v. B. M. R. Co., 95 Ala. 397, 11 South. 341. The respective duties of those traversing such public highway and passing along such grade crossing at a public street and railroad where flagmen were required and maintained were discussed in B. S. R. Co. v. Harrison, 203 Ala. 284, 293, 82 South. 534; Cunningham Hdwe. Co. v. L. & N. R. Co., 209 Ala. 327, 96 South. 358; L. & N. R. R.

[1] 19 Ala. App. 481.

Co. v. Stewart, 128 Ala. 330, 29 South. 562; A. G. S. R. R. Co. v. Anderson, 109 Ala. 299, 19 South. 516.

In L. & N. R. R. Co. v. Webb, 90 Ala. 185, 199. 8 South. 518, 523 (11 L. R. A. 674), Mr. Chief Justice Stone said:

"It is contended for appellee that because the railroad's watchman was in sight, and gave no warning, this was an invitation to him to proceed on his way, and either acquitted him of all imputation of negligence, or, at least, left it a question for the jury. If the watchman had signaled the plaintiff to advance, or, having his attention directed to him, had done any affirmative act inviting his forward movement, we would hold this would be a perfect answer to all imputation of contributory negligence, unless it was shown the plaintiff had knowledge of the approaching train. If, during the short interval elapsing between the moving of the train on the Alabama Great Southern's track, and the approach of the plaintiff to the Louisville & Nashville's track, the watchman's attention had been attracted to the plaintiff, and he had given no warning or signal of danger, we will not say this would not absolve the plaintiff from the absolute imputation of contributory negligence, such as may be ruled on as a conclusion of law. The inquiry whether, in such condition, the watchman would have time to take in the situation and give the warning, would, it would seem, present a question to be solved by the jury."

In the case of Cunningham Hdwe. Co. v. L. & N. R. Co., supra, there was affirmative action shown to have been taken on the part of the flagman which the plaintiff understood to have been an invitation to proceed; and in B. S. R. Co. v. Harrison, supra, the signal was mechanical, and had been maintained for a period sufficient to educate or induce the traveling public to observe its directions or its failure as to danger signals; and in Anderson's Case, supra, a watchman with signals was maintained, and the question of contributory negligence vel non held, for the jury. In L. & N. R. Co. v. Stewart, 128 Ala. 313, 330, 29 South. 562, 568, Mr. Justice Sharpe said:

"It is true that one charged with the duty of giving warnings of the movements of trains may by others be presumed to know what trains are about to move, and that one about to cross the tracks may, when no danger is apparent to him, rely and act upon the invitation given him to cross without observing the usual cautionary requirements of stopping, looking and listening. L. & N. R. R. Co. v. Webb, 90 Ala. 185. And it not appearing that the plaintiff knew to what track the watchman's duties extended, the question of whether she was justified in relying on his signal as invitation to cross all the tracks was under the circumstances one for the jury."

It will be noted also that in Stewart's Case and the Cunningham Hdwe. Co. Case, supra, there were grade street crossings over which passed several parallel railroad tracks. In the Stewart Case there was more that one watchman for the several tracks, and there were reasonable grounds for misunderstanding as to which track the signal given by the watchman applied.

[7] In the instant case plaintiff's intestate was walking along the west side of Twentieth street in the city of Birmingham to the grade crossing of several parallel railroad tracks on which defendant operated its trains, and at which point a flagman was required and maintained, and on approaching the same Mr. Cates was required to exercise at such time and place such care for his own safety as an ordinarily careful and prudent person would have exercised under the circumstances with reference to danger of approaching trains on said track guarded by a watchman. Boyette v. Bradley et al., Receivers, etc., 100 South. 647;[2] Weatherly v. N. C. & St. L. Ry., 166 Ala. 575, 583, 584, 51 South. 959.

[8] The evidence of the two eyewitnesses was sufficient to authorize the reasonable inference by the jury that plaintiff's intestate was struck and injured by defendant's engine upon a track at the time used by it in passing over the public highway at a grade crossing in the city of Birmingham, while said intestate proceeded along the way of or where the sidewalk would have been had it extended across the said railroad track or tracks intersecting Twentieth street.

The two eyewitnesses were: For plaintiff, Mr. McGaha, and for defendant, Mr. Lanier. The former testified that to the best of his recollection it was a Southern engine that struck Mr. Cates, and that the Southern Railway Company maintained a flagman at that point or crossing who was known to him, but that he did not see said crossing flagman before or at the time of the injury. The circumstances entering into the res gestæ of the injury are thus detailed by that witness:

"I was standing in the Southern Railway cashier's office by the window. The shrill whistle of the engine is what attracted my attention, and I immediately turned and looked out the window towards the crossing, and saw the engine hit Mr. Cates. Just about the time I looked out the window it hit Mr. Cates. I did not delay any in turning and looking; I was standing right by the window. I never noticed the bell on the engine ringing. To my best recollection it was not ringing. The engine had not blown before that, that I heard. I was where I could have heard it. I am not positive whether it was a Southern or an A. G. S. engine or train, I never noticed the number. In my best recollection it was a Southern. It was traveling west. Mr. Cates, approached the track on the west side going north; the west side of the street, south side of the track. You call the west side the side towards Bessemer, and the south side would be towards Red Mountain. That was on Twentieth street crossing in the city of Birmingham. At that point it was, and for some months prior

---

[2] Post, p. 370.

thereto it had been, one of the most populous and used crossings in the city. That is a slight grade crossing. The railroad tracks were on a level with the street. Mr. Cates at the time he was struck was on the sidewalk; that is, on the extension of the sidewalk crossing the track. When the engine struck Mr. Cates, he turned around two or three times and fell; knocked him, I imagine, between 10 and 15 feet."

And on cross-examination the witness said:

"I was standing facing the track. I never noticed the engine until I heard the whistle. I never noticed whether the bell was ringing at that time. I didn't see any flagman precede the engine across the crossing. I was not paying any attention to it until the whistle blew. I never noticed whether there was one (flagman) preceded the engine across the track. When the whistle blew I looked around and saw the engine just before it hit Mr. Cates. The big wooden structure just above the pilot was the part of the engine which struck him. * * * The left-hand side of the engine in the direction the engine was traveling struck him. *He was going north* on Twentieth street. To the best of my recollection I heard two short blasts of the whistle before it struck him/ I do not know how many flagmen were on duty at Twentieth street at that time. The two short blasts were right together; nothing uncommon for engine bells to ring in that vicinity at that time." (Italics supplied.)

The witness was then asked, "You never paid any particular attention to train bells ringing; I [you] heard them all the time?" and answered, "Yes, sir."

This witness, on re-direct examination, further testified:

"As to whether there was any bell ringing when I looked out and saw the train upon hearing those two short blasts of the whistle right together, I say, 'I never noticed; never paid any attention to the bell.' In my best recollection I did not hear any then. My attention was attracted to the engine."

As a witness for defendant Mr. Lanier said he was the crossing flagman of Louisville & Nashville Railroad Company who served at its tracks over said grade crossing; that the Alabama Great Southern main lines and that of the Louisville & Nashville were about 8 and 10 feet apart; that at the time of the injury Mr. Cates came on the sidewalk towards the said lines, stopped, and looked around "toward those tall buildings," and then "went on south"; the point where he stopped was about 40 or 50 feet from "Alabama Great Southern main line"; that witness was standing on the Louisville & Nashville line "between the two main lines" when Mr. Cates passed going south; that witness was "facing east watching the Southern flagman flag his train across." At this point in his examination it is recited:

"Question: Did you see this Alabama Great Southern train coming that struck Mr. Cates? Answer: Yes, sir.

"Mr. Harsh: We object to suggesting that it was an Alabama Great Southern train. We object to leading the witness.

"The Court: Don't lead him.

"Question: Did you see this train that struck him? Answer: Yes, sir; I saw the train. As to how fast was the train running at the point where it approached Mr. Cates, I say: 'According to my judgment, it was running not over eight miles an hour, running very slow.' The flagman was flagging it. He was just ahead of the engine flagging it with a red flag. It was daylight. I don't remember exactly what time it was, I suppose it was about 9 o'clock, somewhere along there. Some time in the morning. Mr. Cates passed me as he approached the Alabama Great Southern train. I was standing between the two main lines. When he passed me he was on the sidewalk or what would be the sidewalk if it was extended across there. * * * Well, he passed along behind me; and, after he passed me, I discovered somebody was passing, and I looked around and saw it was this old gentleman that attracted my attention to his going. The train had done hit the crossing, and I began watching him, and after he got between the Alabama Great Southern and Louisville & Nashville main lines, I made up my mind that he wasn't going to stop. * * * When Mr. Cates got between the Louisville & Nashville and Alabama Great Southern main lines I started after him to try to stop him. As to what happened, I say, 'Well, I went on and I run as far as I could to keep from getting hit myself, and grabbed at him, but missed him.' * * * The engine blew a whistle. I don't remember how many times. I heard it blow. I was after the man at the time. I remember hearing the whistle blow all right. As to what time did the whistle blow with respect to the time I started after the man, I say, 'I started after him just as the whistle blew.' He had reached south side of the track."

The witness testified that the engine blew the whistle just as witness started after Mr. Cates, and that he heard the bell ringing before the engine "hit the crossing." On cross-examination the witness explained that the "man I called the Southern flagman was Mr. Nichols. He was flagging on the crossing"; that he (the flagman) was "just in front of the engine" that struck Mr. Cates, and was "not in the track." It is perhaps best to let this witness make his own statement, as follows:

"The man I called the Southern flagman was Mr. Nichols. He was flagging on the crossing. He was just in front of the engine that struck Mr. Cates. He was not in the track. As to how far in front of it was he, I say, 'I suppose as far as from here to that stand. He come all the way across the crossing ahead of it.' From me to that stand I suppose is about 5 feet. He was about 5 feet in front of the engine. Mr. Cates was between the Louisville & Nashville main line and the Alabama Great Southern main line when I started after him. He wasn't running. I suppose he was about 5 feet from the track on which he was struck; about half way between the two tracks, about half way to the track on which he was struck. At that time the Southern

flagman, the crossing flagman, was about 5 feet ahead of the train. The engine projected over the railing on both sides about 18 inches or 2 feet, something like that. Answering the question, 'When Mr. Cates was that 18 inches or 2 feet north of the north rail of the track on which he was subsequently struck, how far towards the east away from Mr. Cates was that engine?' I say, 'Why, it was somewhere between the B. R., L. & P. Company track and that walk.' I don't know how far it was from him, I never measured it. I suppose it was maybe 10 feet away."

[9] The witness had testified that the Southern flagman (Mr. Nichols) had a red flag in his hands; that though many people frequented the crossing at the time of the accident there were "not a great many at that time that I saw"; and that the train was running 8 miles an hour. There was conflict in the evidence as to the direction plaintiff's intestate was going, as we have indicated above. The affirmative charge should not be given, if there is evidence reasonably affording an inference adverse to the right of recovery by the party asking the charge. McMillan v. Aiken, 205 Ala. 35, 40, 88 South. 135.

A prima facie case was made out by plaintiff so as to require the defendant to acquit itself of negligence under the statute (Code §§ 5473, 5476), and the ordinances of the city of Birmingham read to the jury and of which the courts take judicial knowledge. The ordinances are taken from the charge of, the court as follows:

"I am reading now from the Code of Ordinances of the city of Birmingham as of 1921, being section 78 on page 54, which in part reads, leaving out anything except the pertinent portion to which I want to call your attention, as follows: 'No railroad engine or train or street car shall run along or upon any street at a greater rate of speed than 20 miles an hour; provided that in that portion of the city of Birmingham bounded on the west by Seventeenth street, and on the east by Twenty-Fourth street, and on the north by Fourth avenue, and on the south by avenue C, the speed of street cars and steam railroad engines and trains in crossing the intersection of two or more streets shall not exceed 8 miles per hour.'

"Section 92, on page 58 of the same little book of ordinances, we have this: 'It shall be the duty of all flagmen at crossings where the same are required by this Code, or may hereafter be required by ordinance, to remain at all times in full view of persons approaching said crossings either on foot or in vehicles, and to promptly signal them to pass over if they can safely do so, or to stop, if the train is approaching too near to admit of safe passage.'

"Then ordinance No. 91, page 57, provides: 'It shall be the duty of all persons operating trains over the street crossings hereafter named to keep flagman or watchman at such crossings at all times, day and night, as follows: Twenty-Fourth street, between Morris and Caldwell avenue; Twentieth street at the crossing of the following railroads: The Louisville & Nashville Railroad, the Alabama Great Southern Railroad, the Southern Railway and the Seaboard Air Line Railway.'"

[10, 11] The witness Lanier places the distance of the Southern flagman who preceded the engine as 5 feet ahead of the engine, states that Mr. Cates was about 5 feet away, and then said: "I suppose it was maybe 10 feet away." Conflict in evidence of any witness on a material question of fact presents a question of credibility for the jury. Jones v. Bell, 201 Ala. 336, 77 South. 998. This conflict is material; if the flagman was walking about 5 feet in front of the engine, and Cates was walking 10 feet away, this would bring Cates and the flagman near to each other, and within the vision of that flagman, whose duty it was to protect against injury, and who, so far as this evidence shows, did nothing to save Cates, who walked in front of the train and was struck on the opposite or left-hand side of the track from Lanier. There was no intervening object shown to have obstructed the view of Nichols from Mr. Cates. Thus there was evidence from which the reasonable inference might be drawn by the jury of subsequent negligence of such defendant's agent. It is true that there is no presumption of subsequent negligence, but such may be inferred by the jury if the circumstances warrant. And on this there was a jury question as to the action or nonaction of the flagman, as well as the engineer whose duty it was to be on the lookout; that is to say, if the flagman saw Mr. Cates' peril (as did Lanier) as he was crossing, and did not seek to intervene to protect him, or if he signaled Mr. Cates to cross, and by reason of the speed of the train or the infirmity of plaintiff's intestate (he being a slight paralytic) he could not cross in safety, these circumstances, to be deduced from the respective distances, etc., indicated, might warrant the inference of subsequent negligence by the jury.

The engineer who was operating defendant's engine, or its flagman, required and kept at this crossing, did not testify what the circumstances were immediately preceding and at the time of the injury of plaintiff's intestate. The evidence is sufficient to cast the burden upon defendant to acquit itself of negligence. "Its agents," under the concluding requirements of section 5476 of the Code, were, no doubt, as well, if not better, prepared to detail the facts and circumstances of the injury and their efforts in the discharge of their duty than others; yet the engineer in charge of the train, or the crossing flagman, were not made witnesses (nor their absence accounted for) in the effort to comply with the provisions of the above section of the Code or the ordinances in question. We do not by this mean to say that the burden of proof required under the statute may not be discharged by other witnesses, but to say that this effort at compliance with the statute was not reasonably

satisfactory to the trial court, and we entertain the same view. The affirmative charges were properly refused.

[11] Mrs. Cates, having testified as to the nature and extent of her husband's injuries and his suffering therefrom, said: "He continued to complaint" (complain) "up to the time of his death. Dr. Solomon waited on him." She was then asked the following question: "Did he charge any bill, or was that done for the Southern Railway?" and answered: "It was done for the Southern Railway." The record then recites: "Counsel for defendant said: 'Wait a minute. I object to that; illegal, irrelevant, and incompetent.' The court said, 'Overruled.' Counsel for defendant stated, 'We except.'" There was no error; the objection was after answer; and no motion was made to exclude. Moreover, the evidence later showed without objection that Dr. Solomon was the Southern Railway surgeon when Mr. Cates was in the hospital; that witness consulted with him as to her husband's condition, and that he treated the latter for his injuries, and consulted with them as to such injuries after Mr. Cates had been discharged from the hospital. The question and answer to which exception was reserved were without prejudice.

[13] The trial court, in charging the jury as to the duty of a pedestrian about to traverse such a grade crossing, said:

"* * * Something has been said here in the argument and brought out in the evidence with reference to one's physical condition. Well, that simply resolves itself and comes down to this, coming back to the acid test that I have just previously told you about, how would a reasonably prudent person, who was so situated as Andrew J. Cates, have acted under the same or like circumstances? Let me illustrate: If a man's eyesight was bad, or his hearing was bad, as the case may be, then the question would be, How would a reasonably prudent man who was so circumstanced with reference to eyes and ears as he was—how would he act?"

This was merely by way of illustration, and not the submission to the jury of an issue of fact not presented by the evidence. It was undisputed that Mr. Cates was a partial paralytic, and was in full sight of the crossing flagman, walking toward the approaching flagman and engine; and it was for the jury to say whether, under the circumstances, he was guilty of contributory negligence, and, if so, whether those in charge of the engine were guilty of subsequent negligence as to him in his paralytic condition. When this portion of the oral charge, to which exception was reserved, is considered with the whole instruction on the subject, there is no error. Lewis v. Martin, 210 Ala. 401, 98 South. 635.

The evidence that a crossing flagman was walking 5 feet in front of the engine, flagging the same, and that plaintiff's intestate, a partial paralytic, was 5 feet away from the track and 10 feet in front of the train, and could have walked between the flagman and the train and to the other side of the track before he was stricken, presents a difficult situation to understand. It was the duty of the flagman, under the ordinances, to signal pedestrians or traffic having occasion to be at such point, as to whether or not the way was clear. When the foregoing evidence, and the duty under the ordinance, is considered, with that of the other eyewitness to the effect that he saw no such crossing flagman flagging the train at the time of the accident, it warranted the oral charge to which exception was taken.

[14] The trial court stated to the jury that no damages were claimed for the death of plaintiff's intestate, and the refusal to further instruct the jury to that effect, or as to proximate cause of a wrongful or wanton act, was proper. Charges 5 and 6 were properly refused.

[15, 16] Charges 16 and 17 were properly refused. Plaintiff claimed for permanent injury—"and was rendered permanently less able to work and earn money." There was undisputed evidence on the part of members of intestate's family that he suffered great pain from his injured arm, and constantly uttered expressions of pain occasioned thereby to the time of his death—something more than a mere temporary inconvenience. Stokes v. Ralpho Township, 187 Pa. 333, 40 Atl. 958.

[17] The trial court should not have granted appellant's motion for a new trial. Plaintiff's intestate sustained his injuries on April 15, 1922; remained in the hospital 28 days; lived about 3 weeks after he returned to his home; and continually suffered pain from his injured arm to the date of his death. The ground of the motion not embraced in the above is that the judgment was excessive. We cannot say the verdict was excessive and the result of prejudice or wrong motive. The cases of City of Montgomery v. Wyche, 169 Ala. 181, 195, 53 South. 786; Birmingham R. & E. Co. v. Baird, 130 Ala. 334, 356, 30 South. 456, 54 L. R. A. 752, 89 Am. St. Rep. 43; and St. L., etc., Ry. v. Craft, 237 U. S. 648, 35 Sup. Ct. 704, 59 L. Ed. 1160, 1163, were death cases.

The judgment of the circuit court is affirmed.

Affirmed.

ANDERSON, C. J., and SOMERVILLE and GARDNER, JJ., concur.