(96 South. 79)

## NASHVILLE, C. & ST. L. RY. CO. v. JONES.
(7 Div. 386.)

(Supreme Court of Alabama. April 12, 1923.)

**1. Railroads ☞417—Violation of speed ordinance negligence.**

It is negligence for a train to run at a speed exceeding the limit fixed by a city ordinance.

**2. Railroads ☞425—Violation of speed ordinance must be proximate cause of injury.**

To justify recovery by the owner of the animal for negligence in running a train at a speed exceeding the limit fixed by ordinance, it must appear that the violation of the ordinance was the proximate cause of the injury.

**3. Railroads ☞419(2)—Care required as to dog.**

On account of the superior intelligence of dogs, a different rule prevails as to the care required to avoid injuring them from that relating to cattle or stock, and an engineer who sees a dog standing near the track is not required to exercise extra diligence, but has the right to rely on the presumption that the dog will not move into danger.

**4. Railroads ☞425—Unlawful speed held not proximate cause of injury to dog.**

In an action for the death of a dog, killed by a train running at a speed in excess of a city ordinance, where it appeared that no one saw the dog on the track, and the undisputed testimony showed that there was no blood or sign of collision on the front of the engine, and that the only blood was on the step at the side, and the engineer stated positively that he saw the dog standing on a parallel track and that it did not go in front of the engine, the conclusion that the dog ran in front of the train was unwarranted, and defendant was entitled to an affirmative charge, on the ground that the speed was not shown to be the proximate cause of the injury.

Appeal from Circuit Court, Etowah County; Woodson J. Martin, Judge.

Action for damages by C. A. Jones against the Nashville, Chattanooga & St. Louis Railway Company. From a judgment for plaintiff, defendant appeals. Transferred from Court of Appeals under section 6, Acts 1911, p. 449. Reversed and remanded.

Goodhue & Goodhue, of Gadsden, for appellant.

The evidence fails to show that defendant's servants or agents operating the train were guilty of negligence proximately causing the death of the dog. Under the evidence, the running of the train at the rate of 15 or 20 miles an hour was not the proximate cause of the dog's death. Defendant was therefore due the general affirmative charge. West. Ry. of Ala. v. Mutch, 97 Ala. 194, 11 South. 894, 21 L. R. A. 316, 38 Am. St. Rep. 179; 22 R. C. L. 206; Mobile L. & R. Co. v. McKay, 163 Ala. 111, 50 South. 1035.

Samuel A. Lokey, of Gadsden, for appellee.

Whether there was negligence on the part of defendant's engineer, causing the death of the dog, was a question for the jury to determine. Fire Ins. Cos. v. Felrath, 77 Ala. 194, 54 Am. Rep. 58; South & N. A. R. Co. v. Donovan, 84 Ala. 141, 4 South. 142; A. G. S. Ry. v. McDaniel, 192 Ala. 639, 69 South. 60; Anniston Elec. & Gas. Co. v. Hewitt, 139 Ala. 442, 36 South. 39, 101 Am. St. Rep. 42.

GARDNER, J. Appellee brought this suit against the appellant to recover damages for the death of his dog, killed by one of the trains of the railway company in the city of Attalla.

Count C rested for recovery upon the negligence of the defendant railway company in running the train in the city of Attalla at an unlawful rate of speed, to wit, 15 or 20 miles per hour, in violation of the city ordinance fixing the rate of speed at 6 miles per hour. The affirmative charge was requested as to this particular count and also upon the whole case.

Counts 1 and 2 fix the place where the dog was killed at a public street crossing where the railway crosses what is known as Line street, while the dog was in the act of crossing the track at this public crossing.

[1] However, the evidence fails to disclose that the dog was at this public street crossing, or was in the act of crossing at this place. When the body of the dog was found it was some 8 or 15 feet from the crossing, as variously estimated. One McClendon, a witness for the plaintiff, testified that the train was running from 10 to 15 miles an hour, but paid no attention to whether the bell was ringing, and did not hear the whistle blow, saying:

"I was about 30 steps from the railroad, and saw the dog immediately after the train passed; it was cut in two. One part of the body was lying on one side of the rail and the other was between the two rails. I did not see the dog when it was killed."

The train that killed the dog was a passenger train of the defendant, and the accident occurred in the morning. The fireman testified in defendant's behalf that he recalled walking to the gangway, and, to use the language of the witness—

"saw something flounch out between the engine and the tank on the left-hand side of the train going toward Guntersville; that is on the Louisville & Nashville side of the railroad, on the fireman's side next to the Louisville & Nashville railroad. The Louisville & Nashville and Nashville, Chattanooga & St. Louis run parallel, and the tracks are a distance of something like 8 or 10 feet apart."

He further stated that the usual signals were given, and the bell rung, and that when they reached Attalla he told the engineer something had been hit, and upon looking found some blood on the tank step, just back of the engine, between the tank and the engine. Witness further stated:

"We looked on the pilot and on the drivers and the main road [rod] and I did not see any blood around there or anything. There was no blood on the front part of the engine anywhere, and the only sign was on this step on the side of the engine."

One N. A. Jolly was the engineer in charge of the engine on the morning the dog was killed. He testified as to giving the proper and usual signals at the crossing, and that he saw the dog standing on the Louisville and Nashville tracks; that the dog was standing on the track with his head up looking, "and kinder shaking his head," the witness continuing:

"Then I saw him for 15 or 20 feet; that is, before the front of the engine hid my sight. I never saw him any more. The dog was standing still. The bell on the engine was ringing at the time. The dog did not at any time come in front of my engine. He never moved. He did not move from the time I saw him until I got by him. * * * The dog did not get on the track ahead of me."

The testimony of this witness further discloses that upon looking they only found blood on the steps.

[2] It was, of course, negligence for the train to be run at a speed exceeding the limit fixed by the city ordinance. S. & N. R. Co. v. Donovan, 84 Ala. 141, 4 South. 142; Weatherly v. N. C. & St. L. R. Co., 166 Ala. 575, 51 South. 959. But to justify recovery for such negligence it must appear that the violation of this ordinance was the proximate cause of the injury. W. of A. Rwy. Co. v. Mutch, 97

Ala. 194, 11 South. 894, 21 L. R. A. 316, 38 Am. St. Rep. 179; Weatherly v. N. C. & St. L. R. R. Co., supra.

The undisputed evidence is to the effect there was no blood or any sign of a collision with this dog on the front part of the engine, and the engineer states positively that the dog was standing still on the Louisville and Nashville track, and that it did not go in front of his engine. There was nothing under the evidence in this case to indicate to the engineer that the dog was indifferent to the signals or otherwise in danger.

[3] It will be recalled that a different rule prevails as to dogs from that relating to cattle or stock. This distinction rests upon the generally recognized superior instinct, if not intelligence, of the dog, and the agility and celerity which the dog is commonly observed to employ in avoiding danger or in escaping perils. Ala. City, G. & A. Rwy. Co. v. Lumpkin, 195 Ala. 290, 70 South. 162. Under the testimony here presented, therefore, the engineer had a right to act or refrain from acting upon the presumption that the dog would avoid any danger, or rather that it would not move into danger. The fact, therefore, that the engineer saw the dog standing on the parallel track of the Louisville and Nashville Railroad Company, under the circumstances disclosed by his testimony, created no duty of extra diligence or precaution.

[4] If the testimony of the engineer and fireman is to be believed, the dog ran under the engine and was never on the track in front of it. Arguing to the contrary, counsel for appellee insist that the well-known intelligence of a dog is itself sufficient to indicate that the dog did not run under the engine; but, as we view the testimony, even should the dog have gone in front of the engine, he must have run directly in front of it while going at a speed of from 15 to 18 miles an hour. The steam had been shut off from the engine, and the train was coasting and making less noise on that account. In view of the fact that no one saw the dog on this track prior to the time it was killed, and the uncontradicted testimony of the engineer and fireman to the effect that no blood or other sign of a collision of that character were found on the front of the engine, together with the positive testimony of the engineer who saw the dog and who states that it did not get on the track in front of his engine, any conclusion to the contrary would be based upon a mere speculation and not upon any inference to be drawn from the proof. This court has often declared that a conclusion resting upon mere supposition is insufficient foundation for a verdict. Continental Cas. Co. v. Paul, ante, p. 166, 95 South. 814, and authorities therein cited.

We are therefore of the opinion, under the authority of the Mutch Case, supra, the speed of the train in excess of the city ordinance was not the proximate cause of this accident, and that the affirmative charge was due the defendant.

It therefore results that the judgment will be reversed, and the cause remanded.

Reversed and remanded.

ANDERSON, C. J., and SAYRE and MILLER, JJ., concur.