43 So.2d 136

**ALABAMA GREAT SOUTHERN R. CO. v. HILL.**

2 Div. 788.

Court of Appeals of Alabama.

May 10, 1949.

Rehearing Denied June 7, 1949.

Benners, Burr, Stokely & McKamy and M. L. Taliaferro, all of Birmingham, for appellant.

Walter P. Gewin, of Greensboro, for appellee.

CARR, Judge.

The plaintiff's foxhound was killed by the defendant's train. This is a suit to recover damages therefor. The cause below was tried without a jury, and there was a judgment in favor of the plaintiff.

The evidence in the main appears without dispute.

The dog was killed at about 4:30 A.M. at a point north of Stewart's Station, Alabama, and about three hundred yards south of a place where a highway crossed the railroad track. The crossing was on or around a curve as the train approached from the south. The country along the tracks in the vicinity was flat and level and there was a clearing of about thirty or forty feet on each side of the appellant's roadbed.

It appears that the appellee and some friends were fox hunting. They came to the highway crossing indicated above and were there stopped and listening to a chase in which about forty hounds were participating. As the dogs came toward the railroad right of way, the hunters heard the train approaching from the south. The hound that was killed had a loud or distinguishable bark. After the other dogs had passed over the railroad track in their chase, the bark of the dog in question could be no longer heard. The hunting party then went immediately to investigate and found the hound lying in the middle of the railroad track fatally injured.

The engineer and fireman who were operating the Diesel engine at the time testified at the trial of the cause. Both of these parties stated in effect that they were keeping such a lookout as was consistent with their other duties; that they neither saw nor heard any of the dogs; that the locomotive was in all respects in good operating condition; and that they were traveling at a rate of speed of about fifty-five or sixty miles per hour.

The appellant contends that under the evidence the lower court erred in rendering judgment in favor of the appellee.

The appellee having established by the evidence that the dog was killed by the defendant's train, the burden of proof was then placed on the appellant to show that it was not negligently done. Title 48, Sec. 173, Code 1940; Louisville & N. R. Co. v. Green, 222 Ala. 557, 133 So. 294; Louisville & N. R. Co. v. Coxe, 218 Ala. 25, 117 So. 293; Louisville & N. R. Co. v. Watson, 208 Ala. 319, 94 So. 551; Southern R. Co. v. Harris, 207 Ala. 534, 93 So. 470; Louisville & N. R. Co. v. Carter, 213 Ala. 393, 104 So. 754.

The bare statement of the above doctrine may invite some uncertainty as to its applicable purport and meaning. A further discussion of the rule is appropriate.

In 10 R. C. L. p. 897, Section 45, under the heading of "Shifting of Burden", we find:

"The term 'burden of proof' has two distinct meanings. By the one is meant the duty of establishing the truth of a given proposition or issue by such a quantum of evidence as the law demands in the case in which the issue arises; by the other is meant the duty of producing evidence at the beginning or at any subsequent stage of the trial, in order to make or meet a prima facie case. Generally speaking, the burden of proof, in the sense of the duty of producing evidence, passes from party to party as the case progresses, while the burden of proof, meaning the obligation to establish the truth of the claim by a preponderance of evidence, rests throughout upon the party asserting the affirmative of the issue, and unless he meets this obligation upon the whole case he fails."

See also, Louisville & N. R. Co. v. Green, supra.

In the last cited case, Chief Justice Anderson was discussing the rule in its application to the propriety of the giving or refusal of the general affirmative charge. We are not here primarily concerned with this application. However, in logical reasoning, the opinion affords some analogy to the question before us for review.

In the recent case of Shelton v. Gordon, 252 Ala. 187, 40 So.2d 95, 97, our Supreme Court had occasion to interpret the doctrine of presumption of undue influence in a will contest case. The court held: "But this statement of principle only means that when the evidence shows this situation to have existed, the party against whom this presumption has been cast has the duty of overcoming it by satisfactory evidence, and failing, the opposing contention will prevail. The burden of proof, as such, however, never shifts during the course of the trial and the duty of substantiating that the will was procured by undue influence rests on the contestant throughout."

See also, King v. Aird, 251 Ala. 613, 38 So.2d 883; Birmingham Trust & Savings Co. v. Acacia Mutual Life Assn., 221 Ala. 561, 130 So. 327.

The authorities recognize that because of the agility and celerity which a dog possesses it is alert to avoid danger, and this instinct is found more pronounced in a dog than the ordinary lower animal. However, if at the time of the injury the dog appears to be helpless or indifferent to its peril, an exception is applied. Owen v. Southern R. Co., 222 Ala. 499, 133 So. 33; Nashville, C. & St. L. Ry. Co. v. Jones, 209 Ala. 250, 96 So. 79.

We come to consider the facts in the case at bar in consonance with these principles.

Without dispute in the evidence the dog was killed in open country. Unless there was something indicated by the surroundings that would impose the duty, the agents of the appellant were not required to use extra care in discovering the presence of the dog on the railroad track, or its dangerous proximity thereto. This duty would not have arisen even though the agents had observed the dog on the track, unless, as we have stated, it was helpless or indifferent to its peril. Owen v. Southern R. Co., supra.

As the pack of forty dogs neared the railroad track, they were, of course, barking. The fast moving train was also making the usual noise incident to its operation.

If we should assume that the engineer or fireman, by proper attention and diligence, should have heard the oncoming pack of dogs, we would then be confronted with this doctrine. The agents had a right to act or refrain from acting on the pre-

sumption that because of the natural instinct of the dog he would avoid moving into the path of immediate danger. Authorities, supra.

We do not think that the rule should be rendered inapplicable simply because the dog was chasing a fox.

In the case of Nashville C. & St. L. Ry. Co. v. Jones, supra, Chief Justice Gardner, writing for the Supreme Court, held in effect that the mere fact that the engineer of a railroad company saw a dog standing on a parallel track fifteen or twenty feet away did not impose any extra precaution on the part of the engineer in respect to the safety of the dog.

We confess that these facts are not in complete accordance with those in the case at bar. However, the opinion in the Jones case has some analogy, particularly so since the court held that the affirmative charge was due the defendant.

Appellant's counsel insists in brief that the evidence points to a reasonable inference that the dog ran into the side of the moving train. We do not think that the proof, taken in its entirety, justifies us in holding that this is an unavoidable factual conclusion.

█ We do entertain the view that the evidence is not sufficiently potent, when applied to the controlling rules, to warrant a judgment in favor of the appellee. A contrary opinion would be entirely out of harmony with the theories and doctrines we have attempted to illustrate.

It is ordered that the judgment of the court below be reversed and the cause remanded.

Reversed and remanded.

BRICKEN, P. J., not sitting.

### On Rehearing

CARR, Judge.

In brief on application for rehearing counsel states: "In the opinion in the instant case the following is stated: 'Both of these parties stated *in effect* that they were keeping such a lookout as was consistent with their duties; * * *.' (Emphasis supplied.) It is respectfully insisted that the foregoing statement from the opinion can not be supported by the evidence in this case, and the statement from the opinion has an important bearing on this case."

This is not an exact copy from our original opinion. We included the word "other" just before the word "duties."

Be this as it may, our statement is based on the following testimony, which we copy from the record:

The engineer:

"Q. Along about this point what were you doing at that time? A. Well, of course, I was sitting up there observing ahead all the time, and when I blew for Stewart's and blew for those crossings up there, I was still watching ahead.

"Q. Now, do you have any gauges or anything else you watch as you go along in open country? A. Yes, sir.

"Q. At any given second can you state whether you were looking at a gauge or the track on that particular morning? A. No, sir.

"Q. But you were keeping a consistent lookout in connection with your duties of watching gauges on the Diesel locomotive? A. Yes, sir."

The fireman:

"Q. Can you state from your recollection what you were doing that morning, or do you remember exactly what you were doing along at that point? A. Well, I usually leave Akron and go back and check the motors. I have a boiler back there to take care of. I check the gauges on them, before getting to Stewart I am always back in the cab.

"Q. You feel like you were back in the cab before you got to this point? A. Yes.

"Q. What were you doing in the cab? A. I was sitting on my seat on the left side, and sitting down and looking out.

"Q. Is it your duty, among other things, to look back for hotboxes and look forward and help keep a lookout? A. Yes, sir.

"Q. And consistent with those duties you were keeping a lookout ahead, were you? A. Yes, sir.

470

"Q. You don't have any gauges to watch, do you? A. Not on any motor."

We are requested to clarify or explain our meaning of the following expression: "We do not think that the rule should be rendered inapplicable simply because the dog was chasing a fox."

In consonance with the authorities we held: "However, if at the time of the injury the dog appears to be helpless or indifferent to its peril, an exception is applied."

■ Perhaps it would be more accurate to state that the fact the dog was chasing a fox would not of itself establish his indifference to his peril. Whether or not the dog was indifferent to his danger was a factual issue to be determined by the jury from all the evidence relating thereto.

The other questions pressed on application for rehearing had attention at the time we prepared the original opinion. Any further discussion would in effect be repetitious.

Application for rehearing overruled.

BRICKEN, P. J., not sitting.