78 So.2d 656

ATLANTIC COAST LINE RAILROAD COMPANY

v.

E. E. VISE.

7 Div. 212.

Court of Appeals of Alabama.

Aug. 11, 1953.

Rehearing Denied Nov. 10, 1953.

Dixon, Wooten & Boyett, Talladega, for appellee.

Stringer & Montgomery, Talladega, for appellant.

PRICE, Judge.

E. E. Vise sued to recover damages for the killing of his fox hound by one of defendant's trains. Judgment was rendered for plaintiff in the lower court and his damages assessed at $100. Defendant appeals.

The complaint stated a cause of action against defendant and was sufficiently specific as to the place of the injury. The demurrer was properly overruled. Louisville & N. R. Co. v. Watson, 208 Ala. 319, 94 So. 551; Southern R. Co. v. Harris, 207 Ala. 534, 93 So. 470.

Defendant pleaded the general issue, in short by consent.

The basis of defendant's assignments of error 3, 4 and 5, is the refusal of the court to direct a verdict for defendant.

The question relative to the burden of proof and the duty of the operatives of a railroad train under circumstances as here involved has recently been considered and the authorities collected in Alabama Great Southern R. Co. v. Hill, 34 Ala.App. 466, 43 So.2d 136; Gulf, Mobile & Ohio R. Co. v. Phifer, 34 Ala.App. 588, 42 So.2d 44.

Plaintiff introduced evidence to the effect that he was the owner of a white, black and tan Walker fox hound of the reasonable market value of $125. The dog was last seen alive when she was turned loose on a fox hunt, two and a half miles from defendant's tracks, at night and in the rain. She was later found dead between the rails of defendant's tracks three miles north of the old Waldo Station in Talladega County. The dog was broken and balled up but practically all together except for a part of her tail which was lying nearby. Her hair was off in several places and dried blood and hair was observed on the side of the rails and cross ties ten or fifteen feet upgrade from where she was found. A collar with defendant's name on it was on the dog. She was in a state of mortification. The place where the dog was found was open country and was not at a road crossing.

Plaintiff testified on direct examination he turned the dog loose about July 12, 1950. On cross-examination he testified he last saw her alive on July 5th or 6th, and found her dead on July 10th or 12th. He admitted he signed answers to interrogatories propounded to him by defendant stating: "The dog was turned loose on the Jack Canada place in Talladega County, Alabama, at or about 7 o'clock P. M. July 12, 1950," but stated that he didn't read them before signing.

No effort was made by defendant to meet the prima facie case established by the plaintiff. Defendant's evidence consisted of testimony by C. W. Alford, Chief Train Dispatcher for defendant, to the effect that from July 5th through July 12th there were ten regularly scheduled trains per day, five each way, except on Sunday when there were eight, operating past the point where the dog was killed. Each train had a con-ductor and an engine crew, consisting of an engineer, fireman and brakeman.

Objections were sustained to questions propounded to W. L. Chastain, defendant's Train Master, in an attempt to show the amount of daily wages paid to its train operatives, and that the expense of assembling all the men from every train running past said point from the time the dog was last seen alive until she was found dead, and bringing them to court to testify, in addition to employing others to operate the trains while the regular crews were attending court, would be so excessive as to be prohibitive, and offered to show the cost to defendant would be in excess of $2,000, and that it would be impossible to secure replacements for the regular train crews.

■ Defendant correctly contends that since there was no injury at a public crossing nor at any of the other places specified under Sections 170 and 171 of Title 48, Code 1940, the requirements of these statutes as to the duty of the engineer had no operation.

The further contention is that the effect of the holding by this court in the Phifer case, supra, was that no burden was placed upon defendant under Section 173 of said Code, unless the evidence tended to show not only that defendant killed the dog, but also that it was killed under such circumstances as that it could be inferred that the engineer saw the dog and knew or should have known she was helpless or indifferent to her peril, and since plaintiff's evidence fails to show that defendant's employees had any knowledge that the dog was in a position of peril, and was helpless or indifferent to her danger, defendant was entitled to a directed verdict. This contention is without merit.

In the Phifer case, defendant presented evidence by the operatives of the train that allegedly killed the dog, which the court concluded was sufficient to rebut the plaintiff's prima facie case.

■ The evidence in the case at bar presented a jury question as to plaintiff's

right to recover for the killing of the dog, and defendant, having failed to meet the burden cast upon it of acquitting itself of negligence, was not entitled to a directed verdict. Southern R. Co. v. Harris, 207 Ala. 534, 93 So. 470; Louisville & Nashville R. Co. v. Carter, 213 Ala. 393, 104 So. 754; Alabama Great Southern R. Co. v. Wedgworth, 208 Ala. 514, 94 So. 549; Louisville & N. R. Co. v. Green, 222 Ala. 557, 133 So. 294.

In brief appellant urges: "Our assignments of error numbered 9, 10, 11, 12, 14, 15 and 16 deal with the trial court's rulings sustaining appellee's objections to questions propounded to the witness Chastain. These questions seek to develop the expense to which the railroad would be put in producing testimony of a great number of employees who were members of the crews of trains passing the scene where the dog was found between the time the dog was last seen alive and the time when she was found dead. As already stated, there was a lapse of seven days or more, and the expense of producing this testimony would be prohibitive, and, in fact, one of the questions we asked was whether the railroad could continue its operations if all these witnesses were produced in court. * * * We are not unmindful of the fact that the courts have construed the statutes placing the burden of proof on a party as constitutional where the party was permitted to offer evidence to overcome the burden of proof placed upon such party. However, under the facts shown in this case, where the cost of producing such testimony would be prohibitive or would be an enormous amount of money, such as appellant offered to prove, then we insist that the application of the burden of proof statute in such a case would amount to the taking of property of the defendant without due process of law and would be a violation of the Fourteenth Amendment of the Constitution of the United States."

■■ It is firmly established by the decision of our courts that when plaintiff has shown that his dog was killed by defendant's train, the burden is then placed on defendant to show the killing was not negli-

gently done, authorities supra, and where there is evidence to show the dog was killed by one of defendant's trains, the burden is on defendant to show that none of its trains which may have reasonably done the killing was negligently operated with respect to that result. Alabama Great Southern R. Co. v. Wedgworth, supra. The evidence as to the expense to which it would be put in meeting such burden was immaterial and the court properly sustained objections to questions calling for such testimony.

■ Charge number 4 states an abstract proposition of law without instructing the jury as to its effect upon the evidence in the case. Johnson v. Louisville & N. R. Co., 220 Ala. 649, 127 So. 216; Francis v. Imperial Sanitary Laundry & Dry Cleaning Co., 241 Ala. 327, 2 So.2d 388; Powers v. Williams, 34 Ala.App. 579, 42 So.2d 58.

■ The matters dealt with in charge number 7 were substantially covered by the court's oral charge. Moreover, since no evidence was introduced as to how the killing occurred, both of said charges were abstract. Louisville & Nashville R. Co. v. Carter, 213 Ala. 393, 104 So. 754.

This question was asked plaintiff's witness, Pat Cooper: "Mr. Cooper, what in your opinion was the reasonable market value of that dog on the occasion when you saw her, assuming that she was in the same condition as when she was killed?"

Defendant objected on the grounds the question called for illegal, irrelevant, incompetent and immaterial testimony; the dog was not specifically identified as being the dog described in the complaint; witness was not qualified to express an opinion as to the dog's value; it was not shown the dog was in the same condition at the time it was alleged to have been killed as when seen by witness, the evidence showing the dog had not been seen for a week or more.

The witness had testified he had been a fox hunter since 1938. He had raised and trained fox dogs and had bought and sold at least two or three hundred and had dealt

only with Walker dogs. The qualities that go to determine the value of a fox hound, and the characteristics commonly accepted among fox hunters as determinative of the value of the dog, are its mouth, breed and endurance. He knew Mr. Vise's black, brown and tan Walker hound named Shirley, and saw her last at plaintiff's home around the first of July, 1950. She was around eighteen months old and was the only Walker black, brown and tan bitch there except the dog's mother, who was around six years of age.

■ The witness was sufficiently qualified to state his opinion as to the value of the dog. Louisville & Nashville R. Co. **v.** Watson, 208 Ala. 319, 94 So. 551.

The court stated he was overruling the objection with the understanding the matter would be connected up by plaintiff. The plaintiff was later recalled to the stand and testified the dog described by the witness Cooper was the same dog that was later found dead on defendant's tracks, and there was no change in her condition between the occasion testified to by Mr. Cooper and the time plaintiff last saw her alive.

■ The error, if any, in sustaining plaintiff's objection to the question propounded to witness Chastain: "Were these engines that operated past there July 12th, from July 11th, equipped with cowcatchers," was harmless, the witness having stated he could not answer the question without the records and he did not have the records with him. Supreme Court Rule 45, Code 1940, Title 7, Appendix.

Defendant excepted to this portion of the court's charge:

"Now, Gentlemen, as I say, the first thing you have got to decide is was the dog killed by the negligence of this railroad company and then, if you decide that it was killed, then there is a presumption raised by this statute that that killing was the result of negligence on the part of the railroad company and then it is up to the railroad company to offer evidence to reasonably satisfy you that it was guilty of no negligence. In other words, to over-

come the presumption that was raised by this statute, and if they do that then the railroad company is again entitled to the verdict in this case. If they fail to so reasonably satisfy you then the plaintiff in this case would be entitled to recover."

The court then instructed the jury further:

"Gentlemen of the jury, Mr. Stringer, the attorney for the defendant in this case, has pointed out in his exceptions to my charge, an error which I have made, which I will at this time attempt to correct. I made this statement, as I recall it, or this statement in substance, in giving my charge, that if you are reasonably satisfied from the evidence that the dog in question was killed by the defendant's trains, or its engines or cars, then the burden of proof would be on the railroad company to show itself to be free from negligence. I should have gone further and said this: Unless the testimony offered by the plaintiff did not fairly prove or fairly show that the defendant was free from negligence. In other words, if the plaintiff's testimony showed that the defendant was free from negligence, then there would be no burden on the defendant to offer such testimony because it would already be in the record.

"With that correction are you satisfied?

"Mr. Stringer: Yes, I think so."

At the close of the instruction the court asked:

"Are you satisfied with the charge and amendments?

"Mr. Stringer: With the exception noted."

Defendant argues in brief "We take the position that this part of the court's oral charge was erroneous because it misplaced the burden of proof, which question has already been discussed, and for the further reason that it was only the duty of the defendant to reasonably satisfy the jury that it was free from negligence after discovery of the dog's peril which caused the death of the dog."

█ The court correctly stated the burden of proof. Title 48, Section 173, Code 1940; Louisville & Nashville R. Co. v. Green, 222 Ala. 557, 133 So. 294; Louisville & Nashville R. Co. v. Coxe, 218 Ala. 25, 117 So. 293; Louisville & Nashville R. Co. v. Watson, 208 Ala. 319, 94 So. 551; Southern R. Co. v. Harris, 207 Ala. 534, 93 So. 470; Louisville & N. R. Co. v. Carter, 213 Ala. 393, 104 So. 754; Alabama Great Southern R. Co. v. Hill, 34 Ala.App. 466, 43 So.2d 136; Gulf, Mobile & Ohio R. Co. v. Phifer, 34 Ala.App. 588, 42 So.2d 44.

The judgment of the trial court is affirmed.

Affirmed.