[Exchange Underwriters Agency, Royal Assur. of London v. Bates, et al.]

# Exchange Underwriters Agency, Royal Assur. of London *v.* Bates, *et al.*

### Assumpsit.

(Decided June 30, 1915.   Rehearing denied November 18, 1915.
69 South. 956.)

1. **Insurance; Penalty; Tariff Association.**—Where the action was on a fire insurance policy, and the complaint sought to recover, in addition to the loss, the penalty imposed by § 4594, Code 1907, as amended by Acts 1911, p. 315, the complaint was not bad for failure to allege that suit was filed after the expiration of fifteen days from the filing of the proof of loss, since the effect of the amendment is not to require the allegation of a′ literal compliance with every requirement of the act.

2. **Same; Pleas; Encumbered Personalty.**—Where the action was to recover loss under a fire insurance policy, a plea setting up the provisions of the policy of non liability for mortgaged personal property, was bad for a failure to show what part of the property destroyed was real, and what was personal.

3. **Pleading; Replication; Failure to Demur.**—Where defendant failed to demur and filed a rejoinder to a replication, a defect in the replication of waiver to a plea of forfeiture under the policy, was waived.

4. **Appeal and Error; Harmless Error; Evidence.**—Where a witness was allowed to use the expression "think" instead of "best judgment," the error was cured by a subsequent explanation that the witness meant best judgment.

5. **Evidence; Opinion; Value.**—It was proper to permit a witness to answer the question as to how much an engine was diminished in value by a fire, since the question simply asked for a shorthand rendering of the facts, and not for an opinion as to the amount of damages, or how much plaintiff was entitled to recover.

6. **Insurance; Pleading; Variance.**—Where the action was for loss under a fire insurance policy, proof of a policy bearing some additions to the corporate names not appearing in the policy as declared upon, was not a material variance, especially where defendant admitted in answer to interrogatories that it had executed the policies sued on.

7. **Same; Evidence; Hearsay.**—Where the action was on a fire policy, and whether some of the property was mortgaged, was directly in issue, the hearsay evidence of a witness as to a mortgage on some of the property, was properly excluded.

8. **Same; Issues; Execution of Policy.**—In the absence of a plea of non est factum, it was proper to refuse to allow defendant to dispute the execution of the policy sued on.

9. **Charge of Court; Directing Verdict.**—Where the pleas set up forfeiture under the policy, and were not proven without conflict in the evidence, defendant was not entitled to a directed verdict.

[Exchange Underwriters Agency, Royal Assur. of London v. Bates, et al.]

10. **Insurance; Fire Policy; Requisite Title.**—In order to be the unconditional and sole owners within the meaning of the policy, it was not necessary that the insured be vested with the legal title; it being enough that insured were equitably entitled to immdiate and absolute legal ownership.

11. **Same; Construction; Location.**—In referring to the location of the property insured, the phrases in the policy "in a gin house," and "in additions attached thereto" will be construed against the insurer.

12. **Appeal and Error; Harmless Error; Cured by Verdict.**—Where the jury failed to add in their verdict, to the actual damages suffered, the 20% penalty imposed by § 4595, Code 1907, as amended by Acts 1911, p. 315, any error of the court in charging as to the penalty was cured.

APPEAL from Morgan Law and Equity Court.

Heard before Hon. THOMAS W. WERT.

Action by J. A. Bates and W. B. Bates against the Exchange Underwriters' Agency of the Royal Exchange Assurance of London, England. Judgment for plaintiffs, and defendant appeals. Affirmed.

The substance of the complaint sufficiently appears. The demurrers raise the point of a misjoinder of counts seeking a recovery under the policy, and for the penalty; that the property was not sufficiently described, and that the suit was filed before the 15-day period.

Plea 3 set up the provision of the policy that it should be void if the insured has or shall hereafter make or procure any other contracts of insurance, whether valid or not, on property covered, in whole or in part, by this policy, or if the interest of the insured be other than unconditional and sole ownership, with the allegation that the interest of plaintiff was other than unconditional and sole ownership.

Plea 4 sets up the condition that the policy was to be void if the subject of the insurance be a building on ground not owned by the insured in fee simple, and alleges that the building was on the ground not owned by insured in fee simple.

Plea 6 sets up the provision of the policy that cotton should not be stored in the ginhouse except by special permission indorsed on the policy, and that cotton was so stored without such indorsement or consent.

Plea 6 is practically the same as plea 4.

Plea 8 set up a condition that insured will keep a book containing a faithful record of all cotton put into or taken from the gin or cotton house, and the production of said record in case of loss, and alleged the breach in not keeping such a book.

Plea 9 sets up the mortgage clause of the policy, and that the insured answered that there was no mortgage or incumbrance on the property, and then sets out certain mortgages which it is alleged were an incumbrance or mortgage on the property insured.

Plea 13 sets up the clause of the policy rendering the policy void, if insured has concealed or misrepresented in writing, or otherwise, any material facts or circumstances concerning this insurance, and alleges as a breach of this part of the policy the concealment of the mortgages set out in plea 9.

Plea 14 sets up fraud or false swearing by the insured touching these mortgages, and the avoidance of the policy by reason of a condition contained therein against fraud and false swearing.

Plea 15 sets up requirements that the building insured be on ground owned in fee simple by the insured, and the fact that the building was on ground not owned in fee simple by the insured.

Plea 16 sets up the ownership and title clause of the policy, and its breach, and the fact that insured was not the owner, and which fact was not expressed in writing upon the policy.

(18) Same as 8. (21) Same as 3. (22) Same as 5. (26) Same as 9. (28) Same as 3. (29) Same as 5. (30) Same as 6. (32) Same as 8. (33) Same as 9. (34) Same as 10. (31) Same as 7. (27) Same as 10, and, further, in so far as the complaint seeks to recover of this defendant for the value of one gristmill and appurtenances thereto while contained in the above-described ginhouse, and on one engine and boiler, and appurtenances and appliances usual thereto, while contained in the above-described ginhouse, and on one engine and boiler, and appurtenances and appliances usual thereto, while contained in the above-described boiler and ginhouse, which was separately insured in and by the policy sued on, say.

(24) Same as 7. (23) Same as 6. (20) Same as 10, with this additional: Comes defendant further, and for answer to complaint and to each count thereof separately and severally, in and so far as the same seeks to recover of this defendant for the value of cotton ginning machinery, and all kinds of appurtenances and appliances usual thereto, while contained in the said ginhouse and additions, including scales, conveyors, and elevat-

tors attached to or adjoining said building, which defendant averred was separately insured in and by the policy sued on.

(19) Same as plea 9. (17) Same as plea 7. (12) That the property insured in and by the policy of insurance sued on was burned through the fault of plaintiff.

(11) Sets up the provision of the policy that unless provided by agreement indorsed on the policy or added thereto, the policy shall be void if the subject of insurance be personal property and be or become incumbered by a chattel mortgage, and then alleges certain chattel mortgages as existing upon the chattels covered by the policy.

(10) Practically the same as 9.

(7) Breach of conditions of the policy, providing that one iron-hoop barrel, full of salt water and two metal buckets shall be continually kept within 10 feet of each stand, and in the same room therewith, to be used in case of fire, and its breach by a failure to keep any water within 10 feet of each gin stand used.

The following are the replications alluded to: (1) That the allegation of the pleas are untrue; (2) that after the fire which occasioned the loss sued for, and after defendant had notice thereof, it sent to the scene of the fire an agent or adjuster, A. L. Brooks, who was authorized to bind defendant in the premises, and who, after visiting the scene of said fire, and investigating into the cause thereof, and after canvassing with plaintiff, the value of the property insured, and the amount of loss sustained by plaintiff, agreed with plaintiff that their loss under the policy was some $2,300, and promised plaintiff that defendant would pay same; (3) that after the fire which occasioned the loss, one H. Clay Smith, who was defendant's general agent in the vicinity of said fire in its insurance business, investigated into the cause of said fire, and the amount of loss which plaintiffs sustained, going over in detail the value of the several items of insured property which were damaged or destroyed by said fire, and thereafter stated to plaintiff that defendant would pay the amount of loss which they had ascertained and agreed that plaintiff had sustained.

The rejoinder to replications 1, 2, and 3 avers that prior to the doing of the acts and things therein averred, plaintiffs and defendant entered into the following agreement (the agreemnt being the usual nonwaiver agreement required before an adjus-

[Exchange Underwriters Agency, Royal Assur. of London v. Bates, et al.]

ter will take steps to investigate and adjust the loss). When the case was reached for trial, and after each side had announced ready, and a jury had been selected, defendant stated that it had just ascertained on that day that some of defendant's answers to interrogatories had been made under a misapprehension or mistake as to the real facts, and were untrue and, for the purpose of correcting its former answers so as to make them speak the truth, offered certain amendments thereto not necessary to be here set out, which offer the court declined. The other facts sufficiently appear.

JOHN T. GLOVER, for appellant. F. E. ST. JOHN, and CALLAHAN & HARRIS, for appellee.

MAYFIELD, J.—This is an action on a fire insurance policy. The property insured consisted of a ginhouse, cotton ginning machinery, a gristmill, and an engine and boiler. The whole amount of the insurance was $2,500, but this was apportioned separately as to each item above specified, as follows: $300 on the ginhouse, $1,500 on the ginning machinery, $200 on the gristmill, and $500 on the engine and boiler.

(1) The complaint was simple, in Code form, with the addition of a new clause claiming the 25 per cent. penalty provided for by section 4594 of the Code, as amended by General Acts 1911, p. 136. To this complaint the defendant demurred, on the ground that under the amended statute the cause of action attempted to be set up does not accrue until the expiration of 15 days from the filing of the proof of loss by the assured. The court overruled this demurrer, and we are of the opinion that the trial court was correct in this ruling. We do not agree with counsel for appellant that the effect of the amendment of the statute above referred to was to require the plaintiff, in an action like this, to affirmatively allege a literal compliance by the assured with every requirement of the statute as amended, in order to state a cause of action as to the amount of the insurance. The amendment relates to the penalty of 25 per cent. only, and not to the entire cause of action, or the amount due by virtue of the contract of insurance. We do not mean to hold that the complaint must allege that the assured has filed, or caused to be filed, with the insurance company proof of the loss as required by the statute, in order to recover the penalty; because

not necessary. We merely call attention to many holdings of this court, to the effect that a complaint cannot be purged of nonrecoverable damages, by demurrer, and that the statute in question does not require, if it even contemplates, that the penalty must be claimed at all, in order to be recoverable. But as to this we do not here decide, merely calling attention to the wording of the statute.

Moreover, it clearly appears from an inspection of the record in this case, including the verdict of the jury and the judgment entry, that the jury did not find for the plaintiffs as to the penalty; and hence no injury could result to the defendant as to any adverse ruling which related alone to the penalty.

To the complaint the defendant filed 34 pleas, all of which were special except the first two. The plaintiffs demurred to pleas, 7, 10, 11, 12, 17, 19, 20, 23, 24, 27, 31, and 34, the demurrer being sustained as to each of the pleas enumerated above. The plaintiffs filed three replications to the other special pleas as to which no demurrers were interposed, which pleas were numbered 3, 4, 5, 6, 8, 9, 13, 14, 15, 16, 18, 21, 22, 25, 26, 28, 29, 30, 32, and 33. A demurrer was interposed to replication 3, but plaintiffs withdrew this replication and thus eliminated it from the issues. The defendant then filed a rejoinder to replications 1 and 2, to which a demurrer was interposed, and sustained. Issue was joined on the 20 pleas last enumerated, and on replications 1 and 2, thereto filed, and the trial resulted in a verdict as follows: "We, the jury, render our verdict in favor of the plaintiffs for full amount insured, $2,500.00, with 8 per cent. interest from date policy fell due."

This court demurs to such a multiplicity of pleadings and issues as shown by this record. How can a jury consider, pass upon, and correctly render a true verdict on all the issues raised and submitted to them on this trial? How can a trial court, within a reasonable time for the trial of a case like this, correctly instruct the jury as to the law which should govern them in passing upon and deciding each of these many issues? We intimate no criticism of the trial court or of the attorneys conducting this trial, because the practice pursued in this trial is allowed, if not encouraged, by the practice and procedure generally prevailing in this state, and records like this one are not uncommon and the number is fast increasing. Such a practice, we submit, tends to multiply and confuse the real issues rather

than to winnow out the certain and definite issues affirmed by one side and denied by the other.

(2) Plea 11 was bad and subject to demurrer, for that it failed to show what part of the property insured was personalty and what part realty, and therefore what part of the property insured was within the defense attempted to be asserted by the plea. This was particularly true in this case, owing to the ambiguous or uncertain character of the property insured, some of it being in the nature of fixtures which, owning to the peculiar circumstances attending their connection and use, with the premises, might be either personalty or realty. Moreover, the identical, the same, defense was raised by plea 9, as to which the demurrer was overruled.

(3) It may be that plaintiff's replication 2 was defective, but its sufficiency was not challenged by appropriate demurrer; but it was answered by a special rejoinder which was in the nature of a confession and avoidance. The rejoinder was insufficient, however, and its defect was pointed out by a demurrer. The replication set up a waiver of the conditions of the policy, breaches of which the pleas alleged as a defense; and the rejoinder attempted to set up an estoppel against the plaintiffs' claiming under the waiver. The replication alleged the waiver to consist in adjusting the loss and promising to pay a certain amount. The rejoinder set up an agreement between the parties to the effect, that an investigation as to the amount of the loss should not be held to be a waiver of such defenses as were set up by the special pleas. The agreement did not show that an adjustment of the loss and a promise to pay should not be held to be a waiver. It was merely agreed that an investigation as to the cause of the fire, and as to the amount of the loss or damage, should not constitute a waiver of the insurance company's defenses.—*Draper's Case*, 187 Ala. 103, 65 South. 926, 927.

There was no reversible error in the court's declining to allow the defendant to amend its answer to the interrogatories propounded to it by the plaintiffs under the statute. The offer to amend came too late.

(4, 5) There was no error in declining to exclude the answer of the witness to the question as to the extent of the damages, because he used the word "think" instead of the word "judgment." The answer was subsequently explained so as to show that he used the word in the sense and meaning of best judg-

ment (as to the extent of the damages). There was no error in allowing the witness to answer the question as to how much the engine was diminished in value by the fire. We do not think that this question called for the witness' opinion as to the amount of damages which the plaintiffs suffered, or which they were entitled to recover, as to which we have frequently decided that one cannot testify or give his opinion. It did not even ask the witness to give an opinion as to how much the engine was damaged. It merely called for a shorthand rendering of the facts, which any witness could give who was competent to testify. There was no difference between this mode and having the witness to state the value, before and after the fire.

Moreover, the objection did not go to the possibly objectionable feature of the question; that is, that the question called for the opinion of a witness touching matters of fact as to which he could not give his opinion. The objection was that it was not the proper method of proving the loss upon the engine.— *Troy Co. v. Boswell,* 186 Ala. 409, 65 South. 141.

(6) There is nothing in the contention that there was a material variance between the policy of insurance sued on and one offered in evidence. While there are some appendages of nomenclature to the corporate name appearing in the policy offered in evidence, which are not added to the name in the one sued on, the two are not shown to be materially different, and both are shown to refer to the same corporation and to the same contract of insurance. The defendant, in its answers to interrogatories admitted that it executed the policy sued on, and there is no doubt that the one sued on is the same contract as the one offered in evidence. There can be no doubt as to this; and, this being true, there could be no variance.

There is no merit in the objection to the question propounder to Bates, which asked the witness if another party agreed that $2,000 was the value of the machinery, or the amount of the loss by fire. The witness was only giving a shorthand rendering of what the adjusting agent agreed was the amount of the loss.—*Shafer v. Hausman,* 139 Ala. 237-241, 35 South. 691.

(7) There was no error in declining to allow the witness Bates to testify as to a certain mortgage. This mortgage was directly put in issue by one or more pleas, and was not collateral matter; and the witness was shown to have no knowledge of the mortgage except hearsay information. When it appeared

that the witness had no knowledge of the mortgage, as to which he could testify, the court properly excluded what he had said about it, based on hearsay.

(8) There being no plea of non est factum, the court properly declined to allow the defendant to dispute the execution of the policy sued upon.—Code, § 5332.

The defendant was not entitled to the affirmative charge. No one of its special pleas was proved without conflict. It was not even shown by the undisputed evidence that any written application for the insurance policy was made by these plaintiffs. The application was probably made by one or both of the plaintiffs; but the proof fails to establish the allegations of the pleas in this respect.

(9) There was no evidence to show that the plaintiffs knew of the incumbrances on the property when the insurance policy was issued. The incumbrances, if any existed, were not made by the plaintiffs; and it was certainly not proven without dispute that they were guilty of any fraud or fraudulent misrepresentations in procuring the insurance policy; and, as to the pleas setting up these defenses, there was a special replication to each, which was not challenged by demurrer, and the evidence certainly tended to prove this special replication, which would have prevented the affirmative charge being given for the defendant as to these pleas.

(10) It was not necessary that the plaintiffs should be vested with the legal title to the property insured, in order to be the "unconditional and sole owners," within the meaning of that term as used in the insurance policy. If the insured were armed with the immediate and present right, when the policy was obtained, to go into a court of equity and obtain the unconditional and absolute legal estate in the property insured, the phrase above quoted was complied with.—*Loventhal v. Insurance Co.,* 112 Ala. 108, 29 South. 419; s. c. 33 L. R. A. 258, 57 Am. St. Rep. 17.

(11) There is nothing in the contention that the property insured was not all within the building described in the policy. The policy reads, "in a ginhouse," and, "in additions attached thereto." Construing this phrase against the writer of the policy, we cannot say that the property was not all situated as described.—19 Cyc. 656; *Michener's Case,* 133 Ala. 635, 32 South. 225, and cases cited.

[Conner v. Ray.]

(12) As before stated, there was no reversible error as to any charges relating to the 25 per cent. penalty, as it conclusively appears that the jury did not add the penalty to the "actual damages" as the statute (section 4595 of the Code) authorizes. The defendant should congratulate itself upon, rather than complain of, any action of the court or the jury as to the penalty.

Finding no error, the judgment must be affirmed.

Affirmed.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.