66 So.2d 159

**MILWAUKEE MECHANICS INS. CO. v. MAPLES.**

8 Div. 12.

Court of Appeals of Alabama.

Jan. 13, 1953.

Rehearing Denied March 3, 1953.

76

F. W. Davies and Davies & Williams, Birmingham, and Mitchell & Poellnitz, Florence, for appellant.

Bradshaw & Barnett, Elbert B. Haltom and Geo. E. Barnett, Jr., all of Florence, for appellee.

HARWOOD, Judge.

This is an appeal from a verdict and judgment rendered and entered in the plaintiff's favor in a suit on a fire insurance policy.

The complaint contains one count in which it is set forth that the plaintiff claims $622.22 as the pro rata liability of the defendant for fire damage to a building, which the defendant insured to the amount of $4,000 against loss by fire, which building was damaged by fire on June 14, 1949 to the amount of $4,000.

It was averred that the total amount of fire insurance carried on the building was $27,000, and that the policy issued by the defendant limited its liability to its proportionate share of the total amount of insurance on the building.

The complaint also averred that the plaintiff was at the time of the issuance of the policy and at the time of the fire the sole owner of the damaged building; that on March 15, 1949 the plaintiff, for a consideration of $100, had given a 90-day option to William P. Engel to purchase the building for $33,000, said option being silent as to who should bear the loss in event the building was damaged during the option period or before conveyance; that William P. Engel did on May 23, 1949 give to the plaintiff a written notice of his intention to exercise the option, but that at the time of the fire the plaintiff had not executed nor delivered any deed to Engel, nor had she relinquished possession.

It was further averred that prior to the fire the said Engel did assign his interest in the option to Sears, Roebuck and Company, a corporation; that after the fire and before any conveyance by her, the corporation duly asserted to plaintiff its claim to all fire insurance proceeds due under any and all fire insurance policies on the building; that after considerable negotiation between plaintiff and the said corporation the corporation agreed to, and did, sell, transfer, and assign all its rights and interests in the proceeds due under all of said policies in consideration of the plaintiff agreeing to a reduction of $1,000 as the purchase price of the building, and the plaintiff alleges that she brings this suit as owner of the policy and the rights thereunder by virtue of said assignment.

It was further averred that after the agreement between the plaintiff and Sears, Roebuck and Company relative to the fire insurance proceeds, and subsequent to the fire damage to the building she conveyed the building to Sears, Roebuck and Company under the terms of the option, except as modified by the $1,000 reduction agreement, all of which the defendant had notice.

The defendant filed a demurrer to the complaint asserting among other grounds, that the complaint showed that plaintiff suffered no loss; that the risk of loss was upon Sears, Roebuck and Company at the time of the fire; and that Sears, Roebuck and Company not being a named assured, had no interest to assign.

The court overruled defendant's demurrer to the complaint.

The defendant then filed five pleas. Plea 1 was the general issue, and plea 2 was of payment. Pleas 3 and 4 set up the provisions of the policy prohibiting insurance on the building in excess of $21,000, and averred a breach of this provision in that plaintiff had fire insurance totalling $27,000 at the time of the fire.

Plea 5 set up the pro rata clause of the policy and averred that plaintiff should not recover more than the amount of the policy as it bore to the total amount of the insurance of $27,000 carried at the time of the fire.

The plaintiff's demurrers to pleas 1, 2, 3, and 4 were overruled, and as to plea 5 the demurrer was sustained.

The plaintiff filed some sixteen replications. Replication 1 was general. Special replications 2 to 16 inclusive were filed to pleas 3 and 4.

All of the replications sought in varying terms to set up a waiver of the warranty against additional insurance.

Demurrers were filed to all replications and by the court overruled. In brief counsel for appellant argue only the action of the court in overruling the demurrer to replications 10 and 15. We shall therefore set out the substance of these two replications only.

Replication 10 in substance averred that the policy was issued by W. H. Conner, a general agent for defendant, who had issued her policies annually for several years on the building; that it was plaintiff's practice to apportion her fire insurance on said building among five or six agents which fact was well known to defendant's agent;

that said agent made it a practice to renew plaintiff's policy annually covering said building, and this was done without advising plaintiff and without inquiring as to other insurance covering said property; that due to failure of defendant's agent to ever make inquiry regarding the total amount of insurance the plaintiff assumed and believed said agent knew the amount of insurance kept in force; that the policy sued upon was a renewal policy and was delivered without inquiring as to other amounts of insurance being written by the other agents, and the limitation as to the amount of permitted insurance was never discussed by said agent with plaintiff nor was the limitation provision ever called to her attention, nor did she have knowledge of such limitation provision until after the fire; and that the agent of defendant well knew that plaintiff reposed confidence in the agent to deliver her a policy of fire insurance which would protect her.

The replication further averred that despite such knowledge and despite the agent's knowledge of plaintiff's annual business practices concerning the writing of insurance covering such property the said agent by oversight or wrongfully inserted the provision in said policy without advising or consulting plaintiff and defendant is estopped to set up the matter contained in the plea.

The averments of replication 15 are substantially the same as those of replication 10, above.

In reply to the replications the defendant filed five rejoinders. Rejoinders 1 and 2 were general rejoinders.

Rejoinders 3, 4, and 5 were special rejoinders filed separately to pleas 2, 3, 4, and 5.

Rejoinder 3 averred that prior to the matters set up in the replications the plaintiff and defendant entered into a nonwaiver agreement, a copy of which was attached and made a part of the rejoinder.

Rejoinder 4 is substantially the same as rejoinder 3.

Rejoinder 5 averred that the alleged offer to pay plaintiff $1,000, set forth in one or more of the replications, was made in an effort to compromise a disputed claim, of which act the plaintiff ought not to take advantage.

Demurrers were sustained as to rejoinders 3 and 5, and overruled as to rejoinders 1, 2, and 4.

The plaintiff then filed three surrejoinders. Surrejoinder 1 was the general denial.

Surrejoinders 2 and 3 were filed as to rejoinder 4.

Surrejoinder 2 averred in substance that prior to the execution of the nonwaiver agreement the defendant's adjuster fraudulently stated to plaintiff that she would get her insurance in a few weeks, and that the companies, including the defendant, would pay her loss; that he could not understand why she had paid Sears, Roebuck and Company $1,000 for she was entitled to all the insurance; that it was customary to sign a nonwaiver agreement before getting the insurance money. It was further averred that all such statements were fraudulently made with a view to misleading plaintiff who was ignorant in matters pertaining to adjustments of fire insurance losses; that said adjuster was skilled in such matters and wilfully led plaintiff into the belief that said agreement was only a formality necessary for her to get the insurance money; that plaintiff, relying on such representations signed the nonwaiver agreement not knowing its legal effect and believing it was only a formality to enable her to get paid.

Surrejoinder 3 averred that subsequent to the nonwaiver agreement and after full investigation of the loss, and with full knowledge that plaintiff had a total insurance of $27,000, defendant's adjuster told plaintiff her loss would be paid within a few weeks; that later defendant's adjuster offered to pay her $1,000 for the loss, stating this was all she was due since she had sold the building in its fire damaged condition for only $1,000 less than she had contracted to sell it for. It was further averred that the defendant never made known it was claiming

that the policy was forfeited because of over insurance until after suit was filed, and defendant is estopped to insist on the non-waiver agreement.

The defendant's demurrer to the surre-joinder being overruled, issue was joined.

The evidence presented in the trial below shows that in 1943 the appellee (plaintiff below) as devisee under her husband's will, became the owner of a brick building in Florence, Alabama.

On March 15, 1949 the appellee gave a 90-day option to William P. Engel, who was acting for Sears, Roebuck and Company, to purchase the building for $33,000. This option provided that possession should be given on delivery of the deed.

On May 23, 1949 Engel gave notice of the exercising of the option in accordance with the terms thereof. Arrangements were made to complete the transaction on June 15, 1949.

On the night of June 14–15, 1949 the building was damaged by fire.

At the time of the fire the appellee had thereon a total of $27,000 fire insurance represented by policies issued by six different agencies, the policy issued by the appellant being in the amount of $4,000.

On the afternoon of June 15, 1949, the appellant met Mr. Engel in the law office of Mr. W. H. Mitchell, these two gentlemen representing the purchaser. She called her attorney, Mr. H. A. Bradshaw, who soon joined the conference.

The representatives of the purchaser contended that the purchaser, Sears, Roebuck and Company, was entitled to the full amount of the insurance payments for the fire damage since it had a valid contract to purchase before the fire.

Appellee denied this claim and stated she would repair the building back to the extent of the insurance proceeds. The representatives of Sears, Roebuck and Company did not want this arrangement as they did not know what was to be done with the building.

After considerable discussion the parties agreed to go through with the sale on the terms that appellee would accede to a $1,000 reduction in the purchase price and in consideration thereof Sears, Roebuck and Company would assign to appellee any rights and claims the company had to the fire insurance. Upon this understanding the appellee delivered a deed to the property to Sears, Roebuck and Company on the afternoon of June 15, 1949.

The evidence further shows that W. H. Conner, and his wife Mamie Conner, of the Conner Agency in Florence were general agents for the appellant company, and had since 1946 written a $4,000 fire insurance policy on the building with the appellant company, the policy sued upon being the third such policy. Mrs. Conner testified that when she first solicited appellee in 1946 she knew that appellee had other insurance and made a notation on appellee's file in 1947–48 of the names of four other agents who had written policies for appellee on the building.

The evidence shows that from the time of writing the first policy down until the time of the fire the Conner Agency never inquired of appellee the amount of fire insurance kept in force by her on the building; that appellee was never requested to make a written application for insurance, but that it was the practice of the Conner Agency to mail her a renewal policy in appellant company each year. Mrs. Conner testified that she always handled appellant's business in the Conner Agency, except in one instance in 1948, and that she had never discussed with appellee the amount of permitted insurance written in the policies.

It was further shown that on October 26, 1948 W. H. Conner issued an endorsement to appellee's policy permitting a total amount of insurance on the building of $24,000, and that the policy sued upon when first issued contained a limitation of $21,-000.

The appellee testified that up until 1946 she had carried a total of $20,000 fire insurance on the building, and in 1946 she

purchased the $4,000 policy from the Conner Agency. Appellee testified that the $21,000 limitation was never called to her attention, nor had any agent of appellant ever informed her that she had an excess amount of insurance until after suit was filed.

Appellee further testified that about a week after the fire Paul Patton of the General Adjustment Bureau in Florence came to her home and told her he was the adjuster for the company carrying the insurance on her building; that on this first visit he told her to sign some forms and she would get her money in a few weeks on an estimated loss of about $4,200; that Patton stated to her he didn't see why she gave Sears, Roebuck and Company $1,000 for the policy was her insurance and she was to receive it.

Appellee testified that at no time was she notified that appellant was denying liability on the ground that she had the building overinsured, and she first learned of this defense after suit was filed. No premium has been returned to her, nor has offer of return been made.

On cross examination the appellee identified the nonwaiver agreement signed by her. She testified again that before she signed it on Paul Patton's first visit to her he had told her she would get her insurance money in a few weeks. She stated she did not know what she was signing.

She further testified that Mr. Semmes, who took Mr. Patton's place as adjuster later offered to pay her $1,000 for the loss, and stated to her that was all she was out, and based his offer on the reason that she had sold the property for the original price agreed upon, less $1,000.

On recross-examination the appellee further testified that on his first visit Mr. Patton had told her that it was customary, and only a formality, to sign the nonwaiver agreement. That he did not tell her before she signed the agreement that there was a question as to the liability of the company or that she had violated any terms of the policy. She did not read the instrument nor was it read to her, and she relied on Mr. Patton's representations.

She further testified that after she had submitted proof of loss the company never advised her as to any policy violation.

Mrs. L. O. Lovelace, a witness for the appellee, testified that she wrote a one-year $3,000 policy of fire insurance on the building on October 25, 1948, and she knew at the time the Conner Agency had written a policy during the same year; that she called Mr. Conner by phone on the day she wrote the policy and notified him she had just written a $3,000 fire insurance policy on the building. Mr. Conner informed her that appellee had $24,000 of insurance on the building.

For the appellant Mr. Paul Patton testified that on his first visit to appellee he advised her that there was a technical policy violation involved, and it would be necessary for her to agree that he could investigate the matter without either admitting or denying liability and he then requested her to sign a nonwaiver agreement, which she did; that thereafter he secured an estimate of the cost of repairing the building, approximately $4,200, and explained the estimate to appellee, though he made no promise to pay.

On cross-examination Mr. Patton testified when he first went to see the appellee he knew the total amount of insurance she had on the building, and when he told appellee a technical violation was involved he had in mind the over insurance, but he did not tell appellee this, nor did any authorized party, to his knowledge, ever advise appellee, before suit was filed, that the policy was being contested because of over insurance.

We shall now discuss the alleged errors specified in appellant's brief in the order in which they appear in the appellant's brief.

The first error specified relates to assignment of error 47, and asserts error in the court's refusal of appellant's request for the general affirmative charge.

Counsel for appellant argue that under a valid contract to purchase real estate, the

purchaser is the sole owner of the land and the vendor holds the legal title in trust for the vendee and the vendee holds the purchase money in trust for the seller. The relation is the same as that of mortgagor and mortgagee and all the incidents of such relationship attach. The vendee is entitled to the rents and profits as a mortgagee in possession and the risk of loss is upon the vendee. Appellant's counsel cite in support of this argument Loventhal v. Home Insurance Company, 112 Ala. 108, 20 So. 419, 33 L.R.A. 258; Bay Minette Land Co. v. Stapleton, 224 Ala. 175, 139 So. 342; Lynch v. Partin, 250 Ala. 241, 34 So.2d 2; Mitchell v. White, 244 Ala. 603, 14 So.2d 687; Ashurst v. Peck, 101 Ala. 499, 14 So. 541; Wilson v. Thompson, 255 Ala. 165, 51 So.2d 20; Exchange Underwriters' Agency v. Bates, 195 Ala. 161, 69 So. 956; New Brunswick Fire Insurance Co. v. Nichols, 210 Ala. 63, 97 So. 82.

 While the doctrine of equitable conversion has been well established by our decisions, it must be borne in mind that the present suit is at law, and that under the terms of the option the vendor (appellee) was to retain possession of the real property until execution of the deeds. The deed to the property was not executed until the day after the fire.

In Davis v. Williams, 130 Ala. 530, 30 So. 488, 490, 54 L.R.A. 749, our Supreme Court clearly recognized the different rights of the parties in law, and in equity, with respect to an executory contract of sale, as evidenced by the following language:

"In law the contract is wholly, in every particular, executory, and produces no effect upon the respective estates and titles of the parties. The vendor remains to all intents the owner of the land. He can convey it free from any legal claim or incumbrance. He can devise it. On his death intestate it descends to his heirs. The contract in no manner interferes with his legal right to and estate in the land, and he is simply subjected to the legal duty of performing the contract, or paying such damages as a jury should award. On the other hand, the vendee acquires no interest whatever in the land. His right is a mere thing in action, and his duty is a debt—an obligation—to pay the price; and on his death both this right and this duty pass to his personal representatives, and not to his heirs. In short, he obtains at law no real property or interest in real property. The relations between the two parties are wholly personal. No change is made until by the execution and delivery of a deed of conveyance the estate in the land passes to the vendee. Equity views all these relations from a very different standpoint. In some respects, for some purposes, the contract is executory in equity as well as at law; but, so far as the interest or estate in the land of the two parties is concerned, it is regarded as executed, and as operating to transfer the estate from the vendor and to vest it in the vendee. This theory must of necessity make a great difference in the respective rights, duties, and relations of the vendor and vendee. One of the grand principles of equity—one of the great foundation stones upon which the whole superstructure of particular doctrines and rules is erected—is the proposition: Equity regards and treats as done what in good conscience ought to be done. This principle, so brief in its statement, is most broad in its application and fruitful in its results. From it, as the root, spring a large part of the rules which make up the body of equitable jurisprudence. Apply the principle to the present case. By the terms of the contract, the land ought to be conveyed to the vendee, and the purchase money ought to be transferred to the vendor. Equity therefore regards these as done,—the vendee as having acquired the property in the land, and the vendor as having acquired the property in the price. The vendee is looked upon and treated as owner of the land. An equitable estate has vested in him commensurate with that provided for by the contract, whether in fee, for

life, or for years. Although the vendor remains the owner of the legal estate, he holds it as a trustee for the vendee, to whom all the beneficial interest has passed."

It is clear that at the time of the fire the appellee was the legal owner of the insured property in law and in legal possession thereof under the very terms of the option. Legal title being in appellee she had an insurable interest. Continental Fire Insurance Co. v. Brooks, 131 Ala. 614, 30 So. 876.

Consideration of the application of the doctrine of equitable conversion is not necessary to this decision since the purchaser under the executory contract has not been made a party to this suit, and an equitable title in a third party cannot be set up as a defense by the appellant in a suit on its contract with the appellee. Heidisch v. Globe & Republic Ins. Co. of America, 368 Pa. 602, 84 A.2d 566.

Legal title and possession being in appellee at the time of the fire she was entitled to recover for the fire loss under the policy.

Counsel for appellant further argue that appellant was entitled to the general affirmative charge for the reason that the relationship between appellee and Sears, Roebuck and Company, after the executory contract of sale, was the same as that of mortgagee and mortgagor, and by taking an assignment of Sears, Roebuck and Company's interest or claim to the proceeds of the insurance policies the appellee thereby cut off appellant's right to be subrogated to Sears, Roebuck and Company in its claim to the insurance.

■ Conceding, but not deciding, that as between Sears, Roebuck and Company and the appellee, Sears, Roebuck and Company had an equitable claim to the proceeds of the insurance, yet the evidence is undisputed that at the time of the agreement of assignment by Sears, Roebuck and Company the appellee was in possession of the building and the contract for its sale was yet executory. So long as a contract is

executory the parties are at liberty to modify it at pleasure. No new consideration is necessary, mutual consent being sufficient. Montgomery v. Hart, 225 Ala. 471, 144 So. 101; May v. Robinson, 221 Ala. 570, 130 So. 81; Moore v. Williamson, 213 Ala. 274, 104 So. 645, 42 A.L.R. 981.

The policy on which this suit is based was issued months before any executory contract to sell the insured building was made. The appellee vendor was at law before payment of the purchase price and execution and delivery of deed the owner of the entire estate. The appellant had no basis to intermeddle in the dealings between appellee and Sears, Roebuck and Company at the time these parties negotiated their contracts. The appellant's duty therefore is to respond to the party with whom they made the contract of insurance. Dubin Paper Co. v. Insurance Co. of North America, 361 Pa. 68, 63 A.2d 85, 8 A.L.R.2d 1393.

Appellant's second specification of error relates to assignments of error 50, 51, 54, 55, 57 and 59.

All of these assignments relate to the court's refusal to give six of appellant's requested charges all to the effect that in no event was the plaintiff under the evidence entitled to recover more than $1,000 for her entire loss.

It is the contention of appellant's counsel that to allow appellee to recover the full amount of her loss after she has received all but $1,000 of the agreed purchase price from the vendee Sears, Roebuck and Company, would in effect allow her to make a profit on the fire, and in effect turn an insurance contract into a wager, a situation contrary to public policy.

Appellant argues that the doctrine of Aetna Insurance Co. v. Baldwin County Building & Loan Ass'n, 231 Ala. 102, 163 So. 604 squarely supports this point.

We do not agree. In that case the premiums were paid by the mortgagor, the policy providing, among other things, that the loss was payable to the mortgagee (plaintiff) as her interest may appear. The plaintiff foreclosed the mortgage after the

building had burned and purchased the property at the sale for the full amount of the mortgage debt. The mortgagee then sought to recover on the policy. The Supreme Court held that the purchase of the property for the full amount of the debt satisfied the mortgage and the mortgagee was not entitled to recover more.

Under facts of this type the mortgagee's insurable interest is the debt. Such interest diminishes as the debt is paid, and becomes nonexistent when the debt is paid in full.

The policy in the present suit insured Mrs. Maples (appellee) "to the extent of the actual cash value of the property at the time of the loss * * * against all direct loss by fire."

■ At the time the policy was written and at the time of the loss, the appellee, as between appellee and appellant, insurance company, was, in law, the owner of the full insurable interest. The appellant's contract was to insure "to the extent of the actual cash value of the property at the time of the loss." The fact that the appellee later realized by sale to within $1,000 the amount she has agreed to sell the building for is no defense available to the appellant, who was an entire stranger to the dealings between appellee and the vendee. Appellant's liability must, under the contract, be measured by the fire damage at the time of the loss and not by fortuitous circumstances later befalling the insured and to which appellant was in no wise privy. Dubin Paper Co. v. Insurance Co. of North America, supra; Heidisch v. Globe & Republic Ins. Co., supra.

Appellant's third specification of error relates to assignment of error 1, which assignment asserts as error the action of the trial court in overruling appellant's demurrer to the complaint.

Many of the grounds argued under this specification are governed by the discussion already made.

■ However counsel for appellant urge that the complaint is defective be-cause: (1) The plaintiff is seeking to recover as an assignee of Sears, Roebuck and Company, and Sears, Roebuck and Company having no interest in the insurance proceeds was not entitled to sue, and (2) the complaint was demurrable for failure to show whether the alleged assignment by Sears, Roebuck and Company was verbal or written.

The first ground mentioned above is without merit.

The appellee in this case is not only the legal owner of the policy, but by assignment acquired whatever equitable claim Sears, Roebuck and Company may have had to the proceeds of the policy.

Further, a policy of fire insurance, after loss is fixed, becomes a contract for the payment of money and suit must be brought in the name of the beneficial owner. Title 7, Section 127, Code of Alabama 1940; Capital City Ins. Co. v. Jones, 128 Ala. 361, 30 So. 674; Union Ins. Soc. of Canton v. Sudduth, 212 Ala. 649, 103 So. 845.

The second contention is likewise without merit. "When the validity of a contract is not dependent upon a consideration, *or the consideration otherwise appears,* or its effect is not influenced by whether the contract was in writing, the complaint need not state whether the contract was in writing." Dabney v. Grover, 250 Ala. 696, 35 So.2d 913. The complaint in this case clearly alleges a consideration for the assignment, i. e. $1,000 reduction in the purchase price. See also, Societa, etc., v. Lovoy, 231 Ala. 99, 163 So. 642; Johnson v. Delony, 241 Ala. 16, 1 So.2d 11.

■ Appellant's fourth specification of error relates to assignment of errors numbers 5 and 6, which assignments aver error in the action of the court in overruling appellant's demurrer to replication 10 as an answer to pleas 3 and 4.

Pleas 3 and 4 set up a violation of the terms of the policy due to over insurance.

The demurrer was in our opinion properly overruled. The replication (No. 10) avers knowledge of facts on the part of

86

the general agent of appellant sufficiently prior to the loss as to put appellant on notice of the breach of the limitation clause of the policy, with no action by the company indicating its dissent or disapproval of the breach. Certainly the replication shows such a course of dealing as would tend reasonably to lull the insured into a sense of false security, with no misrepresentation or collusion on her part. It is the effect upon the insured that gives vitality to the estoppel. 5 Cooley's Briefs (2nd Ed.) 4290; Great American Ins. Co. v. Dover, 219 Ala. 530, 122 So. 658; Yorkshire Ins. Co. v. Gazis, 219 Ala. 96, 121 So. 84. See also Phoenix Ins. Co. v. Copeland, 86 Ala. 551, 6 So. 143, 4 L.R.A. 848.

What we have written above is also applicable to appellant's fifth specification of error which pertains to the action of the court in overruling appellant's demurrer to replication number 15 to pleas 3 and 4. In addition it is our conclusion that the demurrer was properly overruled under the doctrine of Globe & Rutgers Fire Ins. Co. v. Jones, 213 Ala. 656, 106 So. 172.

Appellant's sixth specification of error is predicated upon assignments of error 19, 20, 21, 22, 23, 24, 25, 26 and 27.

These assignments aver as error the action of the trial court in sustaining appellee's demurrer to appellant's rejoinder number 3.

It should be noted that these assignments are grouped for argument.

Assignments of error 20, 21, 22, 23, and 26, assert error in overruling the demurrer to rejoinder 3 as an answer to replications 10, 11, 12, 12, and 15 respectively.

These replications set up matters of estoppel and waiver occurring prior to the fire loss. Rejoinder 3 affirmatively shows that the nonwaiver agreement was made after the fire loss which occurred on June 14, 1948. The rejoinder was therefore no answer to these replications, and the demurrer as to these replications was properly sustained.

These assignments being grouped for argument, and several being without merit, we pretermit consideration of the remaining. Emergency Aid Life Ass'n v. Gamble, 34 Ala.App. 377, 40 So.2d 887, certiorari denied 252 Ala. 282, 40 So.2d 888.

Appellant's seventh specification of error is based upon assignment of errors 28, 32, 33 and 35.

These assignments aver as error the action of the court in sustaining appellee's demurrer to rejoinder number 5 as an answer to replications 4, 13, 14, and 16.

The above replications were special and in answer to pleas 3 and 4.

Plea 3 averred breach of the policy because of violation of the clause limiting the amount of insurance.

Plea 4 avers violation of the provision of the policy wherein the insured warranted the amount of total outstanding insurance to be less than it actually was.

Replication 4, 13, 14 and 16 are predicated upon the theory that appellant, with full knowledge of the over insurance, did not elect to use such defense prior to suit, but denied its liability solely upon the ground that appellee had obtained within $1,000 of the purchase price agreed upon in the executory contract of sale, and the appellant was now estopped from raising such defense for the first time.

Rejoinder 5 to these replications, and to which demurrer was sustained, averred that "the alleged offer to pay said sum of $1,000.00 was made in an effort to compromise a disputed claim * * * and plaintiff ought not to take advantage of said offer * * *."

As stated in Brookside-Pratt Mining Co. v. Booth, 211 Ala. 268, 100 So. 240, 241, 33 A.L.R. 417:

"A rule of good pleading long prevailing is that whatever the parties respectively allege in their subsequent pleadings must be referred to, fortify, and support, respectively, the complaint or declaration of the plaintiff and the plea of the defendant. The observance of this rule is imperative to prevent an entire change of the 'founda-

tion of the action and of the defense' by 'successive stages of the pleadings' and thus defeat the primary object of pleading. That is to say, the replication must so answer the plea as to support the complaint, and the rejoinder must so answer the replication as to support the plea. In the same manner, the surrejoinder must support the replication, 'the rebutter the rejoinder, and the surrebutter the surrejoinder.' The result of this rule, as said by Mr. Gould, the process being thus conducted, is that which is last pleaded on either side necessarily goes in support of what was first pleaded on the same side. Ex parte Hines, Sir. Gen. (Hines v. McMillan), 205 Ala. 17, 87 So. 691; Wills' Gould on Pleading (6th Ed.) p. 93."

The rejoinder in no way tends to support, fortify or support pleas 3 and 4, and would, if allowed work an entire change of the foundation of the pleas. For this reason, and perhaps other reasons which we pretermit, the demurrer was properly sustained.

Appellant's eighth specification of error relates to assignment of error 36, which asserts as error the action of the trial court in overruling appellant's demurrer to surrejoinder number 2.

It is our conclusion that the action of the lower court in this premise was proper under the inferred doctrine of Bankers Fire & Marine Ins. Co. v. Draper, 242 Ala. 601, 7 So.2d 299.

Appellant's specification 9 is based upon assignment of error number 37 asserting error in the action of the court in overruling appellant's demurrer to surrejoinder 2.

Surrejoinder 3 is somewhat similar to surrejoinder 2, except that it avers that some of the matters set up therein, and also set up in some of the replications, in relation to certain acts alleged by appellee to constitute a waiver, actually occurred after the execution of the nonwaiver agreement. Appellant's rejoinder 3 averred that "prior to the happenings of said matters which are set up in the replications," and

rejoinder 4 averred "as a part of the transactions or conversation in which the matters and things alleged in said replications occurred," etc.

The averments in surrejoinder 3 thus traversed the rejoinders to the extent that if proved brought the issues within the principle that a nonwaiver agreement does not prevent a waiver by subsequent independent acts of a duly authorized agent of the insurer.

Appellant's specification number 10, 11, and 12 based on assignment of error number 41, 43 and 44 respectively relate to exceptions reserved to certain portions of the court's oral charge. These portions excepted to are of considerable length. All in all, when considered with the entire oral charge of the court we think they are correct statements. Largely they are summaries of the pleadings filed. Certainly we find nothing in them probably injurious to the substantial rights of the appellant.

Specification of error 13, based on assignment of error 48 asserts error in the court's refusal of appellant's request for the general affirmative charge. Under the developed evidence and legal principles applicable thereto this charge was correctly refused.

Specification of error 14 relates to assignments of error numbers 52, 53 and 58.

These assignments aver as error the court's refusal to give certain requested charges to the effect that if the jury believe the evidence the risk of loss for damage by fire to the insured building was upon Sears, Roebuck and Company at the time of the fire.

These charges were in our opinion correctly refused in view of what we have above concluded as to the correct legal principles governing this case.

Specification 15, based on assignments of error 60, 61, and 63 relate to the court's refusal to give certain requested charges, numbers 14, 15 and 17. These requested charges are misleading and ambiguous, and invasive of the province of the jury and therefore properly refused.

Specification 16, based on assignments of error 83, 84, and 85 relate to the court's refusal to give certain charges to the effect that Sears, Roebuck and Company did not have any interest in the insurance policy issued to appellee and could not make any valid assignment thereof.

In equity Sears, Roebuck and Company may possibly have had a claim on the insurance proceeds, as between the appellee and the company. It therefore did have a possible claim to assign. The charges were therefore properly refused. See Dubin Paper Co. v. Insurance Co. of North America, supra.

Specification 17 relates to assignments 92, 93, 94, 95 and 96, asserting as error the action of the trial court in permitting appellees to testify, over objections, that appellant had never refunded or offered to refund any premium on the policy involved.

The question of waiver was one of the principal issues raised by the pleading and the evidence, and evidence was introduced tending to show that appellant had notice of the claimed breach of over insurance some six or seven months prior to the fire loss. The evidence was therefore material to the issue of waiver and properly allowed. Appellant asserts that North River Insurance Co., etc., v. Waddell, 216 Ala. 55, 112 So. 336, 52 A.L.R. 838, sustains his contentions that this evidence was improperly admitted. A reading of this cited case reveals however that no question of waiver was presented therein.

Specification 18 is based on assignment of error 39 which asserts error in the court's refusal of appellant's motion for a new trial. In arguing this assignment appellant's counsel present nothing that has not already been covered in their argument in reference to the preceding assignments and which we have already discussed.

Specification 19, based on assignment of error 45, asserts error in the following portion of the court's oral charge, to which exception was reserved:

"If you find for the plaintiff, gentlemen, she would be entitled to recover interest at the legal rate, which is six percent, from the period 60 days following the filing of the proof of loss. In other words, if Plaintiff is entitled to recover, you add interest at the rate of six percent from a date 60 days following receipt of proof of loss by the insurance company from her."

Appellant argues that this charge was erroneous under the express provisions of the policy that nothing became payable until sixty days after proof of loss was received by the company "and ascertainment of the loss is made either by agreement between the insured and this company, or by filing with this company of an award as herein provided."

The undisputed evidence shows that ten days after the fire appellant's adjuster called on appellee and had her sign a nonwaiver agreement. Prior to this visit the adjuster had obtained an estimate of the fire loss from a contractor, and this amount was discussed with the appellee. Shortly thereafter appellant denied liability except to the extent of $1,000 because of the sale of the property under the executory contract.

The above facts would in our opinion constitute a waiver of the requirement of proof of loss and ascertainment of damages.

The evidence further shows however that appellee did furnish proof of loss to appellant which was received on April 6, 1950. Under the court's charge the jury could assess interest only from June 6, 1950, almost one year after the fire loss. Actually the charge was more favorable to appellant than that to which it was entitled. No error can therefore be predicated on this portion of the charge.

Specifications 20, 21, and 22 are based upon assignments of error 64, 65, and 66, respectively. These assignments allege as error the court's action in refusing charges respectively to the effect that a waiver could not be predicated upon anything done or said by Mr. Semmes, the adjuster, or Mr. Conner, or Mrs. Conner. These charges were properly refused under the evidence.

Specifications 23 and 24, based on assignments of error 72 and 74, assert as error the action of the trial court in refusing certain charges affirmative in nature requested as to replications 6 and 9 respectively. The record reveals that these replications were withdrawn before the case was submitted to the jury.

Specification 25 is based on assignment of error 76. This assignment asserts as error the action of the lower court in refusing appellant's request for the affirmative charge as to replication 11.

It is appellant's contention that appellee failed to prove all of the material allegations of this replication.

Under the testimony of Mrs. L. O. Lovelace and Mrs. Conner this contention is without merit, and the charge was properly refused.

Specifications 26 and 27 are based on assignment of errors 80 and 81. These assignments are based on the refusal of appellant's requested charges to the effect that under the evidence the jury would not be authorized to find that any fraud was practiced in the execution of the nonwaiver agreement.

Under appellee's testimony these charges were properly refused.

Specification 27 is based upon assignment of error 82, which asserts as error the court's refusal of appellant's requested charge to the effect that under the evidence the jury would not be authorized to find that there was any waiver of the nonwaiver agreement.

This issue was raised by appellee's surrejoinder 3, and certainly under the evidence presented by appellee the question was one for the jury. The charge was therefore properly denied.

Specification 28 is based upon assignment of error number 90. This assignment asserts as error the action of the court in denying appellant's requested charge to the effect that if the jury believe the evidence Paul Patton did not have any authority to promise to pay the claims of the plaintiff.

Mr. Patton testified that he was at the time of the fire and until about September 1, 1949 manager of the General Adjustment Bureau in Florence. That this matter was first called to his attention by an agent of one of the insurance companies involved, and he considered he was authorized to act as adjuster when he was so notified, as he had previously been so authorized in a thousand cases. At the time he prepared the nonwaiver agreement he had authority from the appellant company to act in investigating and handling the loss so far as recommendations were concerned, and his recommendations were usually followed. The appellant company, while he was still in Florence, had instructed him to offer appellee $1,000. It is undisputed that the appellant company had full knowledge of the over insurance at this time.

Under these facts Patton's apparent authority was a jury question, and the charge was properly refused

The appellant argues that the charge was erroneously refused under the doctrine of Queen Insurance Co. v. Young, 86 Ala. 424, 5 So. 116, 119. We do not agree for in said case it affirmatively appears that the adjuster had entered into an agreement with the insured for the selection of arbitrators to make appraisement of the loss. The agreement specifically provided that such appointment of arbitrators was " 'without reference to any other question within the terms' " of the policy, and further that such appraisement "shall not determine the validity of the contract, nor the liability of this company, nor any other question except only the amount of such loss or damage." Under such facts it was held that the adjuster was without authority to bind the company by a promise to pay the loss. The difference in the facts between the Queen Insurance Company case, supra, and the present case, are obvious.

Specification of error 29 is based on assignments of error numbers 101, 102, 103, 104 and 105.

The basis of these assignments is that the court erred in overruling appellant's objections to questions seeking testimony as to whether any agent of appellant had ever questioned her as to the amount of insurance she carried in other companies, or had ever made inquiry as to the amount of insurance she carried on the property, or had ever in any manner called her attention to the limitation of amount of insurance clause in the policy.

There was evidence introduced in the trial below from which the jury could reasonably infer that the appellant company had notice of the total amount of insurance carried by the appellee some six or seven months prior to the loss, and took no action in reference thereto. The questions to which objections were interposed sought evidence tending to establish consent of the appellant, by silence, to the over insurance, with the resulting waiver of the forfeiture clause. In this aspect the evidence sought was material to the issues, and properly admitted. Alabama State Mutual Assurance Co. v. Long Clothing & Shoe Co., 123 Ala. 667, 26 So. 655.

██ Further it appears that as to one or more of the questions only general grounds were interposed. The question or questions were not obnoxious to all rules of evidence, and not palpably and manifestly illegal. No error therefore resulted from overruling these objections. Walker v. Jones, 33 Ala.App. 348, 34 So.2d 608, certiorari denied 250 Ala. 396, 34 So.2d 614; Farmers Co-op. Warehouse Ass'n v. Shikles, 35 Ala.App. 636, 51 So.2d 554.

Specification of error 30 is based upon assignments of error 134, 135, 137, 138 and 139. These assignments assert as error the action of the trial court in sustaining appellee's objections to certain questions propounded by appellant to the contractor who razed the building after it had been deeded to Sears, Roebuck and Company, which questions were directed toward eliciting testimony as to the salvage value of the materials of the building after razing, and whether such value had been affected by the fire.

The loss that the appellant contracted to pay was damage to the building at the time of the fire. The fact that Sears, Roebuck and Company, after purchase of the building after the fire may have razed it, and may even have been benefited by the fire in that razing the building may have been more easily carried out in its burned condition can in no wise be material in determining the damage to the building by the fire. The evidence sought by the questions was therefore immaterial and irrelevant to this suit, and the objections were properly sustained. See Heidisch v. Globe & Republic Ins. Co. of America, supra.

Specification 31, based on assignment of error 49 asserts as error the action of the trial court in refusing appellant's requested charge, affirmative in nature, to the effect that appellee could only recover nominal damages in this suit.

Under the evidence this charge was properly refused.

Affirmed.

### On Application for Rehearing

In their brief in support of appellant's application for rehearing counsel for appellant contend that we erroneously refused to consider certain assignments of error on the basis of their being grouped for argument with other assignments which we concluded were without merit.

Counsel contend that the grouped assignments involved the same or similar propositions of law, and were therefore grouped for argument and should be considered as though separately presented. See The First National Bank of Montgomery v. Sheehan, 220 Ala. 524, 126 So. 409; Southern Ry. Co. v. Cates, 211 Ala. 282, 100 So. 356.

In our opinion as to appellant's sixth specification of error, we stated that such specification was predicated upon assignments of error 19, 20, 21, 22, 23, 24, 25, 26, and 27, which assignments relate to the trial court's action in sustaining appellee's demurrer to appellant's rejoinder number 3.

We concluded that assignments 20, 21, 22, 23, and 26, asserting error in overruling the demurrer to rejoinder 3 as an answer to replications 10, 11, 12, 12, and 15, respectively, were without merit since these replications set up matters of estoppel and waiver occurring prior to the fire loss, and rejoinder 3 shows on its face that the nonwaiver agreement was made after the fire loss.

Assignments of error 19, 24, 25, and 27 assert error in overruling the demurrer to rejoinder 3 as an answer to replications 4, 13, 14, and 16 respectively.

These replications set up matters of estoppel and waiver resulting from conduct of appellant's adjuster subsequent to the fire loss, and involve entirely different legal principles from those set up in replications 10, 11, 12, and 15, which set up matters of waiver and estoppel growing out of conduct of appellant's general agent in dealings with appellee for several years prior to the fire loss in the sale of insurance policies to appellee.

We do not think therefore that the assignments of error were properly grouped for argument since they involve and depend upon different legal principles for their solution, even though in a broad sense all of the assignments do relate to the sustaining of appellee's demurrer to rejoinder 3.

Regardless, the court overruled the demurrer to rejoinder 4, which counsel for appellant we think correctly characterized in his original brief as being the same in substance as rejoinder 3, except that it averred that the nonwaiver agreement was made and entered into as a part of the transaction or conversation in which the matters and things alleged in the replication occurred, whereas rejoinder 3 alleged the nonwaiver agreement was entered into prior to such happenings.

The issues sought to be presented by appellant's rejoinder 3 were as fully litigated, and as adequately presented as though the demurrer to rejoinder 3 had been overruled.

All matters, evidential and otherwise, available under rejoinder 3 were thus presented in the proceedings below. Whether this was done on the theory that such matters were available under rejoinder 4 and that there was no substantial difference between rejoinder 3, and rejoinder 4 is of no moment, since clearly no harm resulted to the appellant by the court's action in sustaining the demurrer to rejoinder 3. Brasher v. Bromberg, 232 Ala. 450, 168 So. 552; Lambert v. Jefferson (on remandment), 34 Ala.App. 67, at page 79, 36 So.2d 583.

Other matters are argued in appellant's brief on rehearing. These points have in our opinion been sufficiently covered in our original opinion, and no further discussion is indicated.

Application denied.